THE BRITISH AMERICAN INSURANCE COMPANY *vs.*
OLIVER E. WILSON.

Third Judicial District, New Haven, January Term, 1905.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A temporary contract of fire insurance, evidenced by a "binder" in
which the premium rate is left blank, is nevertheless obligatory
upon the parties for such a rate as may thereafter be fixed by the
chairman of the local board of fire underwriters, if such was the
understanding of the parties.

An insurance agent who is directed by his company to reduce the
amount of a risk assumed in a "binder" issued by him, in which
the terms of a "standard policy" are incorporated by reference,
has implied authority, and it thereupon becomes his duty, to take
steps to cancel the contract if necessary to effect the desired re-
duction ; and is liable to the company for any loss due to his neg-
lect.

A request to an agent from his principal, for action in the line of his
agency, is equivalent to a command.

The defendant having issued, as the plaintiff's agent, a "binder" for
$2,500, the plaintiff wrote him, saying : "We prefer that you re-
duce our binder to not exceeding $1,500." *Held* that this was not
the indication of a mere preference, but was a request or command
by the plaintiff.

The complaint counted upon the defendant's neglect to cancel the
binder contract, and to reduce the amount of the insurance as
directed.   *Held* that there was no variance between the proof
afforded by the letter and the allegations of the complaint.

It appeared in evidence that the plaintiff had adjusted its loss upon
the basis of a risk of $2,500 instead of one for $1,500, and in accord-
ance with the terms of the standard policy.   *Held* that nothing
more upon this point was necessary to make out a *prima facie* case
for the plaintiff.

A motion under General Statutes, § 762, to set aside a judgment of non-
suit, need not specify the particular grounds on which it is based.

An answer denying material allegations of the complaint is not demur-
rable as a whole.

If a ruling is correct, it is of no consequence that it was based upon
wrong grounds.

The plaintiff offered in evidence a receipt of the insured for the money
which it, the plaintiff, had paid in settlement of its loss.   *Held*
that this was properly excluded as mere hearsay.

Until reasonable notice to produce the original has been given, a copy

British American Ins. Co. *v.* Wilson.

of a letter written by one party to the other is not admissible in evidence.

Argued January 17th—decided March 9th, 1905.

ACTION to recover damages for the neglect of the defendant, the plaintiff's local agent at Norwalk, to reduce the amount of fire insurance upon a certain risk, as directed by the plaintiff, in consequence of which it was obliged to pay a fire loss of $537 more than it would have been liable for had the reduction been made, brought to the Superior Court in Fairfield County where a demurrer to the answer was overruled (*Roraback, J.*) and the plaintiff was afterwards nonsuited in a trial to the jury before *Robinson, J.;* from the refusal of the trial court to set aside the nonsuit the plaintiff appealed. *Error and new trial ordered.*

*George E. Beers*, with whom was *Charles L. Brooks*, for the appellant (plaintiff).

*J. Belden Hurlbutt*, with whom was *Leo Davis*, for the appellee (defendant).

BALDWIN, J. The defendant was the local agent in Norwalk of several fire insurance companies, including the plaintiff and the Hanover Insurance Company. As agent for the plaintiff and others, on November 30th, 1901, he signed what is called in insurance parlance a "binder," reading as follows :—

"No. 1.

Office of

Thompson Hollister,

19 Liberty Street, New York.

Insure Snap Hook and Eye Co. Incorporated.

$4,000 on Stock.
$14,000 on Mchnry. } as per form

all while contained in the frame and stone building situate on the northwest side of Bridge St., between Norwalk river and Haughian Ave., Norwalk Park, Norwalk, Conn.

12 months from Nov. 30th, 1901.

Rate    .    .    .    .    .

The undersigned Companies herewith assume and make binding the amount of insurance set opposite their respective names, under the terms and conditions of the standard form of policy of the State of New York.

It is understood and agreed that this contract is binding until delivery of policy to Thompson Hollister.

| Company | Amount | Accepted by |
|---|---|---|
| Westchester | $2,500. | O. E. Wilson, Agt. |
| Traders of Chicago | 2,500. | O. E. Wilson, Agt. |
| Caledonia | 2,500. | O. E. Wilson, Agt. |
| British American | 2,500. | O. E. Wilson, Agt. |
| North American | 1,500. | O. E. Wilson, Agt. |
| Spring Garden | 2,000. | O. E. Wilson, Agt. |
| Assurance Co. of America | 2,000. | O. E. Wilson, Agt. |
| New Hampshire | 2,500. | O. E. Wilson, Agt." |

This paper he delivered to Thompson Hollister, an insurance broker representing the Snap Hook & Eye Company of America, who retained it until after the property insured was destroyed by a fire, which occurred December 18th, 1901. On December 9th, 1901, the plaintiff wrote the defendant as to this risk, that it preferred that he should "reduce our binder to not exceeding $1,500."

On the trial in the Superior Court, evidence was introduced tending to prove the following facts :—

The defendant was intrusted by the plaintiff with blank policies, which he could fill up and deliver to the party insured. Rates of premium were fixed by the chairman of the local board of fire underwriters in Norwalk. No rate had been fixed for the risk in question, prior to the loss. No policy could be issued by the defendant until a rate was so fixed. The defendant, soon after receiving the letter of December 9th, signed a binder in behalf of the Hanover Insurance Company for insurance on the property covered by the former binder, to the amount of $1,000. This he did for the purpose of reducing the amount insured by the plain-

tiff to $1,500. He then wrote at the foot of the letter of December 9th, " Have reduced binder on above risk to $1,500 as directed. O. E. Wilson, Agt.", and remailed it to the plaintiff, who received it on December 12th, 1901. In fact the defendant did not, before the fire, notify the insured, nor its broker, nor the Hanover Insurance Company, of his execution of the second binder, nor of any purpose or desire to reduce the amount at the risk of the plaintiff upon the first. The plaintiff settled with the insured, upon the adjustment of the loss, on the basis of its liability to the amount of $2,500. Had that amount been reduced to $1,500, it would have paid proportionally less. The standard form of policy of the State of New York provided that " this policy shall be canceled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation. If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is canceled by this company by giving notice it shall retain only the *pro rata* premium."

The terms of the binder of November 30th show that it was intended to be a temporary contract, but to bind the parties until policies should be issued in conformity with it. Although the rate of premium was left blank, if, as the defendant testified, that was to be thereafter fixed by the chairman of the local board of fire underwriters, the effect of the contract was to bind both parties to such a rate as might, in due course of business, be so fixed. *Smith & Wallace Co.* v. *Prussian National Ins. Co.*, 68 N. J. L. 674, 54 Atl. Rep. 458. By the reference to the standard policy of the State of New York, all the terms and conditions of a policy of that form were made applicable to the binder. One of them is that the insurer may cancel a policy on five days' notice. This gave the plaintiff the right to cancel its obligation under the binder at any time, on five days' notice to the insured. *Lipman* v. *Niagara Fire Ins. Co.*, 121 N. Y.

454, 24 Northeastern Rep. 699. The defendant had, by the letter of December 9th, 1901, implied authority to do whatever was necessary to secure the reduction desired. He could and should have given a five days' notice of a total cancellation to the Snap Hook & Eye Company or to its broker, in the event of his failure to agree with it on such a reduction. He neither attempted to negotiate with them, nor gave notice of a cancellation of the risk. The binder which he executed in behalf of the Hanover Insurance Company was not delivered, and therefore never became operative. A *prima facie* case was thus made out in favor of his principal for any loss due to his neglect to follow the instructions. given. *Phœnix Insurance Co.* v. *Frissell,* 142 Mass. 513, 8 Northeastern Rep. 348.

It is contended by the defendant that the letter of December 9th gave no instructions, but simply indicated a preference. The answer to the complaint, however, describes it as making a request, and such it plainly was. A request to an agent from his principal, for action in the line of the agency, is equivalent to a command.

The complaint counts on a neglect by the defendant to comply with a direction from the plaintiff to cancel a contract of insurance entered into by means of a binder and terminable at any time at the option of the plaintiff, and to reduce the amount of insurance to $1,500 in accordance with that option. The contention that the proof varied from the allegations is without merit. The complaint stated correctly the legal effect of the binder, and of the plaintiff's letter requesting the reduction.

No evidence was offered to show the value of the property insured, the total amount of the insurance upon it, or the expenses of adjusting the losses. There was, however, testimony that what the plaintiff paid to the Snap Hook & Eye Company was paid in accordance with an adjustment made in conformity with the terms and conditions of the standard policy of the State of New York. Nothing more in respect to this point was necessary to make out a *prima facie* case.

It is argued that when a motion is filed to set aside a

judgment of nonsuit it should specify the particular grounds on which it may be based ; and that as none were specified in the plaintiff's motion, it was properly denied.   General Statutes, §762, under which the proceeding was had, makes no such requirement in terms, and none can fairly be implied.

The demurrer to the answer was properly overruled, in view of the denials which it contained of material allegations of the complaint.   It is therefore unnecessary to consider whether the Superior Court was right in overruling it because it did not distinctly specify the reasons why the answer was insufficient.   As the ruling was right, it would be of no consequence if it were put by the trial court on a wrong ground.

There was no error in excluding the receipt given to the plaintiff by the Snap Hook & Eye Company for $1,319.44. It was mere hearsay.   *Newell* v. *Roberts*, 13 Conn. 63 ; 2 Wigm. on Ev., §1456.

Nor was there error in excluding the copy of the letter of November 25th, 1902, from the plaintiff to the defendant. The trial court was warranted in holding that reasonable notice had not been given to the defendant to produce the original.

There was error in denying the motion to set aside the judgment, and a new trial is ordered.

In this opinion the other judges concurred.