# ROYAL INSURANCE COMPANY v WALKER LUMBER COMPANY.

## (No. 795; Decided March 20, 1916; 155 Pac. 1101.)

Fire Insurance—Insurance—Contract to Insure—Contract of Insurance— Building— Amendment— Oral Contract— Implied Contract — Policy of Insurance — Implication of Necessary Elements to Make Contract of Insurance—Construction of Policy—Transfer of Interest Clause—Loss Payable Clause— Insurance Binder.

1. A binding contract of present insurance may be made by correspondence passing between the insurer and insured expressly showing an agreement that a building, then in course of construction, should be covered by a binder pending the submission of a formal application for an insurance policy.

2. An oral contract of insurance wherein certain essentials of a valid contract are unexpressed, but clearly implied from the circumstances of the transaction, is binding from the completion of the agreement, although loss occurs before a contemplated policy is issued.

3. A lumber company supplying materials to another for a building under construction contracted for insurance to protect its interests, pending the issuance of policy to the owner, the intended form of which contained a provision that the policy should be void in case of a transfer of the title, and that, if with the consent of the company, an interest under the policy should exist in favor of any person, other than the insured, the conditions of insurance relating to such interest should be written upon, attached, or appended to the policy. In an action by the lumber company for recovery of loss under its contract with the insurance company, which occurred prior to the issuance of the policy to the owner; *held*, that the conveyance twelve days before loss of the building, by the owner to his sister, did not relieve the insurer of liability to the lumber company, since the stipulation of the proposed policy relating to the effect of a change in title did not apply to the lumber company, as it was not a condition of the intended form of loss payable clause, or rider, that would have been annexed to the policy relating to plaintiff's interests.

4. Ambiguities appearing in the provisions of insurance policy should be given that construction which is more favorable to the insured, or those claiming under the policy.

5. Where a petition in an action to recover on a contract of insurance alleged that defendant undertook and agreed to and with the plaintiff to insure the latter, etc., an amendment made at the trial by adding "and did insure" after the words "undertook and agreed to and with the plaintiff to insure" did not change the cause of action from one for a failure to insure, as agreed, to one for the breach of a contract of present insurance, in view of other allegations of the petition pertinent only to a claim for breach of a present contract, while "contract to insure" and "contract of insurance" are used interchangeably.

Error to the District Court, Laramie County, Hon. William C. Mentzer, Judge.

Action by Walker Lumber Co. to recover from Royal Insurance Company on a contract of fire insurance. On a former hearing reported at 23 Wyo. 264, 148 Pac. 340, the judgment was affirmed on the ground that the bill of exceptions failed to show that it contained all the evidence necessary to a determination of the errors assigned. Plaintiff in error petitioned for a rehearing and made application to withdraw the bill for amendment. The bill having by leave been withdrawn, amended and returned, a rehearing was granted and the cause was considered on the merits. An abstract of briefs filed by counsel was published with the former report. The facts are set forth in the following opinion.

*C. W. Burdick* and *Fred Herrington,* for plaintiff in error.

*John D. Clark,* for defendant in error.

Potter, Chief Justice.

This action was brought upon an alleged contract of insurance to recover for the loss of a building by fire. Upon a trial without a jury the district court found generally for the plaintiff and rendered judgment in its favor for the amount claimed with interest. The case is here on error.

The judgment was affirmed on a former hearing on the ground that the bill of exceptions failed to show that it

contained all the evidence necessary to a determination of the errors assigned. (148 Pac. 340.) On the petition of plaintiff in error a rehearing was granted, and upon its motion the bill was ordered returned to the District Court to permit an application to be made and heard in that court for an amendment of the bill and a rearrangement of the pages thereof, which it was claimed had been disarranged when binding the same together with permanent covers after the bill was allowed and signed. The bill having been amended and returned to this court, now showing that it contains all the evidence including the exhibits, the cause has again been submitted.

1.  The first question to be considered is whether there was a contract of insurance, the defendant, plaintiff in error here, contending that there was not. In the petition it is alleged in substance as to the contract, that the defendant, for a stated consideration, on or about December 19, 1910, undertook and agreed to insure and did insure the plaintiff for the period of one year in the amount of $1,500 against damage resulting from loss by fire of a frame building in Lost Springs, Converse County, Wyoming, known as the building of B. F. Billingsley, which was then in course of construction, and for which the plaintiff was supplying the material, and had then furnished material of a value exceeding $1,500, for which it had not been paid; that the plaintiff thereafter continued to furnish material for said building until its destruction by fire, and at the time it was so destroyed the amount due plaintiff for said material largely exceeded the sum of $1,500. It is also alleged and the fact was not disputed on the trial that the said building was totally destroyed by fire, before completion, on February 19, 1911. Nor was the fact disputed that plaintiff had been damaged thereby in the amount remaining due and unpaid at the time of the trial for the material furnished as aforesaid, for which, with interest, the judgment was rendered.

On the trial it appeared that a policy of insurance had not been issued for said building or plaintiff's interest

therein, but to establish defendant's liability the plaintiff relied upon certain correspondence as showing that the building had been insured by the defendant for $1,500, at plaintiff's request and to cover its said interest in the building, by or under what is known in the insurance business as a "binder". Respecting that matter the undisputed facts are as follows:

The plaintiff, O. L. Walker Lumber Company, was engaged in the general lumber and hardware business at Glenrock and Lost Springs, in Converse County, in this state. Otis L. Walker was the President, Treasurer and Manager of said company, and also agent for the defendant, the Royal Insurance Company, but without authority to write policies of insurance; his authority being limited to soliciting insurance and forwarding the applications to the company, or some one authorized to accept them and write the policies, and, as we understand, the policies when written were sent to him to be delivered, though that fact is not here material. On November 8, 1910, said Walker wrote to the Western Department Managers of the company at Chicago inquiring if they would insure two buildings at Lost Springs in course of construction for the material being used, the insurance to remain in force ninety days, for $2,000 on each building, and also stating that he wanted to insure for $500 the dwelling and furniture of R. C. Willy at Lost Springs for one year, the same to be in force as soon as possible. That letter was referred by said managers to R. H. Douglass, the state agent of the defendant company at Denver, Colorado, who wrote to Walker from Denver on November 28, 1910, as follows:

"Your favor of the 8th instant addressed to the Managers has been referred to me for attention. I would be pleased to have you forward application for risks you mention in your letter. We have bound $500.00 on dwelling and household goods for R. C. Willy at Lost Springs which is subject to distribution of amounts, and I would be pleased to receive application for same showing how you wish the amounts distributed."

By letter dated at Chicago, November 9, 1910, the Managers aforesaid had written to Walker as follows:

"It is our pleasure to advise that Mr. Robt. H. Douglass, State Agent, takes immediate charge of the Mountain field for the Royal. Several weeks ago we deemed it advisable to request you to send applications to us here instead of Denver, this pending an appointment of State Agent. * * * * * We are today sending you, under another cover, envelopes addressed to Mr. Douglass at 602 First National Bank Building, Denver, Colorado. Kindly send all applications to him."

On December 16, 1910, Walker wrote to Douglass, using a letterhead of the O. L. Walker Lumber Company, as follows: "I wish you would kindly bind our stock of lumber at Lost Springs as follows 1000.00 on hardware lime plaster cement and nails and storebuildings 1,000.00 on lumber posts, lath, shingles and millwork, including mouldings, sash and doors. We are now carrying 10,000.00 on this, but our stock is increasing at such a rate that we feel the necessity of further insuring. * * * * * I wish you would also bind the building of Mr. B. F. Billingsley being constructed at Lost Springs for $1500.00 as we are furnishing the material. We can probably make this permanent, but we want to be covered in the meantime." Mr. Douglass replied to that letter by one dated at Denver, December 19, 1910, as follows:

"I beg to acknowledge your favor of the 16th instant requesting a policy on your hardware, lime, plaster, lumber, etc., and am pleased to enclose herewith policy 306-F covering $2000.00 under retail lumber form. * * * * Regarding your request to bind the building of Mr. B. F. Billingsley, which is in course of construction at Lost Springs, Wyo., for $1500.00, beg to say that this has been done; but wish to say that it is necessary for us to have a definite location on this risk if we are to hold the binder. I would therefore ask that you mail me one of our regular application blanks that the policy may be issued. In order

that there may be no misunderstanding, would say that when issuing a binder on a risk it is always with the understanding that the policy be issued within a reasonable time after. In risks of this nature it is our custom to issue the policy for the full term of one year, and if the policy cannot be made permanent when the building is complete the policy is cancelled short rate. I do not believe you have understood this clearly in the past and trust you will be able to make this risk a permanent one, in which event I would be pleased to have you advise me the nature of the risk whether it is a dwelling or mercantile building; it is always necessary that I have this information. Regarding the binder we are holding of Mr. Willy's would say that I would appreciate your giving this matter your prompt attention, on your return, as we have been holding this binder for some time, and it is very necessary that the policy be issued and the matter closed. Thanking you for your usual prompt attention to these matters and awaiting the completed application on the building in course of construction and on the Willy risk, I am with kind regards, Yours very truly, R. H. Douglass, State Agent."

The remaining correspondence between said parties with reference to this matter was as follows:

Glenrock, Wyoming, Jan. 11, 1911. Mr. Robt. H. Douglass, Agt. Denver, Colo. Dear Sir: I am enclosing you herewith check for $18.70 as per your statement of the 16th. Also am handing you blank of Mr. Willey which I trust will enable you to hand me the policy soon. Will get the proper information as soon as possible. (regarding Billingsley.) Yours very truly, O. L. Walker.

Denver, Colo. January 14th, 1911. Mr. O. L. Walker, Agent, Glenrock, Wyoming. Dear Sir:— I beg to acknowledge receipt of your favor of the 11th instant enclosing your check for $18.70 in payment of the premium under Royal Policy 306-F for which I thank you. I am enclosing herewith policy 314-F C. E. Willey, which I trust you will find satisfactory. I note that you will obtain the informa-

tion for us regarding the building in course of construction, for Mr. B. F. Billingsley, the binder for which we are now holding, and trust that you will do this at the earliest possible moment that the policy may be issued. Yours very truly, R. H. Douglass, State Agent.

Denver, Colo. February 1, 1911.   Mr. O. L. Walker, Agent, Glenrock, Wyoming.   Dear Sir:— Under date of December 16th 1910 we bound $1500. on the building of Mr. B. F. Billingsley, at Lost Springs, Wyoming, and now have to request that you forward the regular application that this policy may be issued. Thanking you for your prompt attention to this matter, I am, Yours very truly, R. H. Douglass, State Agent.

Glenrock, Wyoming, Feb. 3, 1911.  Mr. R. H. Douglass, Agt., Denver, Colo.   Dear Sir: Please find enclosed our check for $38.08 in payment of premium No. 317-F.  With reference to the policy of Mr. Willey, we only want this policy to run one year, as we are handling it for that time alone.   If you direct, we will return the policy to you for correction or you can advise us that a payment for one year will be satisfactory and we can attach that to the policy.   Will let you know at once concerning policy of Mr. Billingsley. It may be necessary for us to cancel this, in which case we will of course pay the accrued premium. Yours very truly, O. L. Walker.

Denver, Colo. February 7, 1911.   Mr. O. L. Walker, Agent, Glenrock, Wyoming.   Dear Sir: I beg to acknowledge receipt of your check for $38.08 in payment of 317-F, for which I thank you.  *  *  *  *   I note you say that you will immediately give us the information necessary to issue the Billingsley policy we will very much appreciate same.  *  *  *  *   Yours very truly, R. H. Douglass, State Agent.

The second day after the fire Walker wrote to Douglass as follows: "I regret to report that the hotel of Mr. B. F. Billingsley at Lost Springs has burned.  Kindly write what you think regarding that insurance I asked for & oblige."

He furnished proof of loss dated April 14, 1911, but in the meantime he had been informed by letter from the Loss Superintendent of the defendant company, that it denied all liability, on the ground, among others, that it had made no contract insuring the property in question.

We are of the opinion that the effect of the correspondence aforesaid prior to the fire was to create a present contract of insurance. The letter of the Loss Superintendent above mentioned, which was introduced by the plaintiff to show the defendant's denial of liability and the making of any contract, and referred in detail to the correspondence aforesaid by citing the material portions thereof, is set out in the brief of counsel for plaintiff in error as containing a clear statement of the grounds for the contention that there was no contract of insurance between the parties. To explain the argument in support of that contention we cannot do better than quote the following from the letter so used:

"All of this correspondence denotes a willingness on the part of Mr. Douglass to consent to agree to a contract provided and when he should be furnished with necessary data, should he find upon receipt of full information that the risk was entirely acceptable. The only information, however, that was before him was that the amount required was either $2,000 or $1,500; that the insured was either Mr. B. F. Billingsley or yourself, and that the subject matter of insurance was to be a building located at Lost Springs, Wyoming, all of which was entirely insufficient as a basis to be merged into a valid contract of insurance, and upon this point we beg to advise you that to constitute a valid contract of insurance it is necessary that there should be (1) parties thereto; (2) a premium; (3) a subject matter; (4) an insurable interest; (5) certain risks or perils; (6) duration of risk; (7) amount insured, and there can be no complete contract of insurance unless all these essentials exist either expressly or by implication. Such a contract must contain all the essentials of a valid agree-

ment, so that nothing remains to be done but to fill up and deliver the policy on the one hand, and pay the premium on the other. There must be a meeting of minds upon all the essentials of a valid contract of insurance; in brief, nothing should be left open for future determination. The assent must be mutual since this meeting of minds is vital to the life of the contract. * * * * * * In the present instance the only essential that we are aware of having been determined is that the amount of the policy when issued would have been $1500. The parties to the contract, the amount of premium, the description of the property insured, the interest of the insured, the duration of the risk, have never been mentioned by you, and although repeatedly requested to send an application upon which a contract might be considered and prepared if found acceptable, you have not found it possible to comply therewith."

The writer of that letter properly conceded that some of the essentials of a valid contract might be implied, for that is clearly the law. In Richards on Insurance Law, 3rd Ed., at Section 78, it is said that the essential terms of such a contract upon which there must be a mutual assent, either express or implied, are: The names or description of the parties, the rate of premium, the property insured, the risk insured against, the term or duration of the insurance, and the sum or sums insured. And in Section 79, that it is not necessary in order to close the contract that all the particulars should be made the subject of express negotiation between the parties; for it may well be understood, in the absence of any express declaration to the contrary, that the usual form of policy, or statutory form, if there be one, is intended, or that the market rate or a reasonable rate of premium is to apply, or the same rate or the same terms as before. The same principle is stated in Cooley's Briefs on the Law of Insurance, Vol. I, p. 369, where, after stating that nothing can be left open for future negotiations with reference to the subject-matter, parties, rate of premium, amount, or duration of risk, it is said:

"It is not, however, required that the elements enumerated shall be expressly agreed upon. Such agreement may be implied from various circumstances. So the elements not specifically agreed upon may be presumed to be those of the original policy, where the contract is for renewal, or they may be implied from former dealings of the parties in regard to insurance, or other circumstances." And again, on page 374: "In regard to the conditions governing a contract for insurance it seems to be the general rule that where nothing is said about conditions the parties are presumed to intend that the policy shall contain the conditions usually inserted in policies of insurance in like cases or in policies previously used by the parties." And further, that a similar doctrine, only modified in form, is supported by several authorities cited, viz.: that the law will presume that the minds of the contracting parties met upon a contract containing the terms and conditions usually inserted in policies of insurance usually issued by the insurer on like risks; these statements being made with reference to a contract where no policy has been issued, it having been previously stated (p. 366) that the majority of executory contracts are of such a nature that the insurance attaches immediately, leaving only the execution and delivery of the policy, and possibly the payment of the premium, for the future, or, "in other words, the insurance commences at the time of the agreement."

It is settled law that an oral contract of insurance is valid, unless prohibited by statute, and will be binding from the time such contract is complete, although loss occurs before the policy is issued. (Richards on Insurance Law, 3rd Ed., Sec. 80; 1 Cooley's Briefs on Insurance, pp. 365, 366.) And also that a complete contract may be entered into by what is known as a binder or binding slip. "The regular binder is present insurance, like a policy. It is a temporary, convenient substitute or equivalent for the policy or renewal receipt pending the execution of the formal instrument. It becomes merged in the policy after the policy is delivered." (Richards on Insurance Law, Sec. 81.)

"Whether the contract of insurance is closed orally or by a binding slip, if there is no express agreement to the contrary the legal presumption is that the usual form of policy is to follow." (Id., Sec. 82.) And where the agreement is for present insurance and loss' occurs before the policy is issued the action may be brought upon the binder or oral contract, including in it by inference the terms of the standard or usual policy. (Id., Sec. 83; 1 Cooley's Briefs on Insurance, pp. 535-539.)

That the purpose and effect of a binder is that of immediate insurance was also brought out in the evidence in this case on the cross-examination of one of plaintiff's witnesses, who conducted an insurance agency in the county aforesaid, and who had been called by the plaintiff to establish the premium rate for a building such as the Billingsley building in course of construction. On cross-examination, in response to questions propounded by counsel for defendant below, the witness constructed a policy, or stated how it would be written, to cover plaintiff's interest in the building, taking the binder into consideration, using for the purpose the policy 306-F issued to the plaintiff for its stock of lumber, etc., at Lost Springs, referred to in the Douglass letter of December 19, and which had been introduced in evidence by the plaintiff to show that the plaintiff company was understood to be the party whose interest was to be covered by the insurance on the Billingsley building. During that examination he testified as to a binder as follows:

"Q. On a binder any policy issued would date back as of the date which the binder issued? A. Yes. Q. That is the usage? A. That is the usage, yes, sir. Q. In other words, the binder is a temporary contract until the application can be passed upon—until the information can be received by the insurance company to be acted upon—and when the policy is actually issued it bears date as of the date when it is binding to the company? A. Yes, that is the way I understand it. Q. That is what you understand by a binder? A. That is what I understand by a binder,

yes, sir. Q. Then, as a basis of the binder, the policy which is issued is what we look at for remedy or rights under the policy? A. I think so."

We come then to consider what, if anything, had not been agreed upon or assented to, either expressly or by implication, which would prevent the binder from operating as a contract of present insurance. As above stated, we think its effect was to create a present contract. We think also that some of the statements contained in the letter of the Loss Superintendent were based upon a misinterpretation of the correspondence with reference to the binder. In the first place it was made entirely clear by Mr. Walker's letter of December 16, 1910, that he wished the company to bind the Billingsley building then in course of construction at Lost Springs for the sum of $1,500, so as to cover the interest of the plaintiff, who was furnishing the material, and that the agent so understood it is also clear from his letter of December 19, and the policy therein referred to on plaintiff's lumber, hardware, etc., at Lost Springs. The last clause of the Walker letter aforesaid preceding the signature reads: "We can probably make this permanent, but we want to be covered in the meantime," which could not have been understood otherwise than as meaning that the Lumber Company wanted to be covered for the material it was furnishing for the construction of the building. And in the agent's answer to that letter he stated regarding the request to bind the said building: "that this has been done." It is true that he then stated it would be necessary to have a definite location of the risk to hold the binder, and asked to have a regular application sent to him that the policy might be issued. But there is nothing in the letter to indicate that the company was not then bound or that the binder would not be continued until the regular application blank should be received and the policy issued. On the contrary, it was stated that a binder is issued always with the understanding that the policy be issued within a reasonable time afterwards. In the same letter reference is made to

the binder the company was holding for the building of Mr. Willy, and it was stated that they had been holding that binder for some time and he would appreciate prompt attention to the matter, as it was necessary that the policy be issued and the matter closed. Again, replying to Mr. Walker's letter of January 11th, in which it was stated that he would get the proper information regarding the Billingsley building as soon as possible, Mr. Douglass referred to the fact that the company was holding a binder for that building. And on February 1 he wrote to Mr. Walker stating that under date of December 16, 1910, they had bound $1,500 on the building of B. F. Billingsley at Lost Springs, and requested that the regular application be forwarded so that the policy might be issued; and there is nothing in the subsequent letters prior to the fire to indicate that the binder was regarded as not in force.

The amount of the insurance was clearly stated. And the duration of the risk was not left uncertain. In the first letter of Mr. Douglass with reference to the matter he stated not only that the building had been bound, but that in risks of that nature it was their custom to issue the policy for the full term of one year, and if it could not be made permanent when the building is completed, then to cancel the policy short rate. In addition to that, Mr. Walker testified that the custom of insurance companies, including the defendant, was to date the policy after the issuance of a binder as of the date when the binder was requested; and the other witness above mentioned, when constructing the policy that would have been issued, stated that the date of such policy would be December 16, 1910 (the date of the request for the binder), and that it would run for one year. And Mr. Douglass, testifying on behalf of the defendant company, stated that he would have constructed the policy the same as plaintiff's said witness did.

With reference to the rate of premium: Mr. Walker testified that the custom of the Fire Insurance Association was to fix certain rates for certain buildings and that there

were general rates for buildings in course of construction. And by the testimony of Mr. Brown, plaintiff's other witness, the same fact was shown, and he also stated the rate that was in force in December, 1910, for builders' risks on frame buildings, as fixed by the Rocky Mountain Underwriters' Association for this state, of which the defendant company was a member; and this testimony stands undisputed. There being a general fixed rate in force at the time, it must be held that the parties impliedly assented or contracted with reference to that rate. In British American Ins. Co. v. Wilson, 77 Conn. 559, 60 Atl. 293, wherein suit was brought upon a binder, Mr. Justice Baldwin, speaking for the court, said: "Although the rate of premium was left blank, if, as the defendant testified, that was to be thereafter fixed by the chairman of the local board of fire underwriters, the effect of the contract was to bind both parties to such a rate as might, in due course of business, be so fixed."

It was clearly understood that the property to be insured was the building of B. F. Billingsley in course of construction at Lost Springs, and Mr. Walker testified that he knew of no other building in course of construction at that place at the time. That town could not then have had a population much exceeding one hundred, and it not being shown that any other building was in fact then in course of construction there, we think it fair to assume from Mr. Walker's testimony that no other building than the one in question was then being constructed. Hence there could have been no difficulty in identifying the building. It clearly appears, also, as above indicated, that the plaintiff's interest on account of the material being furnished by it was to be covered by the insurance; and that it had an insurable interest we do not understand to be controverted. The defendant might of course require more definite information as to the location or description of the building before issuing the policy, and, perhaps, it might have declined at any time to further carry the binder if such information was

not furnished, but it does not appear that the information was demanded as a condition to the taking effect of the binder, or its continuing in force.

2.  It appears that on February 7, 1911, twelve days before the loss occurred, Billingsley conveyed his title to the property to his sister, Mrs. Lucinda Watts, and it is contended that such transfer relieved the defendant company of any liability under the contract of insurance. That contention is based upon a condition contained in the printed form of the policy, which, according to the evidence aforesaid, would have been used if a policy had been issued, viz.: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void  *  *  *, if any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment or by voluntary act of the insured, or otherwise." There is nothing in the evidence to show that the defendant company had agreed to the transfer aforesaid. We will consider the proposition as though the policy had been issued in the form as constructed at the trial, without passing upon the question suggested by counsel for defendant in error, plaintiff below, whether, in view of the fact that no policy had been issued upon which might be endorsed an agreement to the transfer, and that the insurance had been applied for by plaintiff for its own benefit, the contract would be in any way affected by a transfer of the property by the owner or the usual policy conditions relating to such a transfer.

It appears that Billingsley, the owner of the building at the date of the binder, would be named in the policy as the insured, and that to cover the plaintiff's interest a rider describing the insurance would be attached with the heading, "Building in Course of Construction," and immediately below those words reading as follows:

"$1,500.00 on a two-story shingle roofed building with adjoining and communicating additions, including founda-

tions and fixtures and building material on the premises to be used in the construction of the building, which is now in process of erection. Privileged to be occupied when completed for ————————— purposes only, and situate at Lost Springs, Converse County, Wyoming. Loss, if any, payable to O. L. Walker Lumber Company, as its interest may appear at time of loss."

A printed form of the rider with blank spaces for inserting the amount, description of building, purpose of occupancy when completed, and name of the party to whom, to the extent of his interest, the loss shall be payable, was shown the witness being examined for the purpose of showing how the policy would be written, and in his answers he stated or assented to the words and figures to be used in filling the blanks, except that as to the blank space in the clause describing the purpose for which the building when completed might be occupied his answer was: "Whatever the occupation should be." And referring to the space for stating the location of the building, the question propounded was: "That would be Lost Springs?" and the answer was: "That would be Lost Springs, yes, sir." We have above added the words, "Converse County, Wyoming," believing them to have been understood both by counsel and witness, and finding them so added in the policy insuring plaintiff's lumber yard to describe its location, which was before the witness and identified by him as the usual form of policy with the rider aforesaid attached for a building in course of construction. The rider contains another paragraph, following the provisions above quoted, entitled or with the heading, "Lightning Clause," providing as follows: "This policy shall cover any direct loss or damage caused by lightning * * * not exceeding the sum insured nor the interest of the insured in the property, and subject in all other respects to the terms and conditions of this policy. * * *"

Among the printed stipulations of the policy thus established at the trial as the ordinary or usual policy for the insurance applied for by the plaintiff, and in a paragraph

subsequent to the one containing the condition aforesaid as to change in the title or possession there is this provision:

"If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached or appended hereto."

That the loss payable clause in the rider would show, in effect, the company's consent to an interest under the policy in favor of the plaintiff is not disputed. But there is a dispute as to the meaning of the latter part of the provision above quoted, stating that the preceding conditions "shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached or appended hereto." If it means, as contended by counsel for plaintiff, defendant in error here, that the provision relating to such interest, the loss payable clause, must express the manner in which the condition as to change in title or possession of the owner of the insured building and other conditions of the policy shall apply, in order to make them applicable at all to the interest of the third party, whether a mortgagee or, as in this case, a material-man, then they would not apply to that interest, for the loss payable clause, the only other provision written upon or attached to the policy relating to the interest of the plaintiff, does not express the manner in which the aforesaid conditions of the policy shall apply to that interest. Nor is there any indorsement or writing upon or attached to the policy doing so, unless the words found in the "lightning clause," "and subject in all other respects to the terms and conditions of this policy" are to be understood as constituting a part of, or explaining or qualifying the loss payable clause. But those words cannot, in our opinion, be so construed. They clearly, we think, have reference only to

the provision of the paragraph containing them, declaring that the policy shall cover direct loss caused by lightning within the stated limitation as to amount, and their sole effect is to make the terms and conditions of the policy applicable to the same extent if the loss be caused by lightning as in case of a loss by fire. They are not connected with the loss payable clause, and we see no reasonable ground for holding that it was intended thereby to express or explain the manner in which the conditions of the policy shall apply respecting the interest protected by the loss payable clause. The policy would therefore lack a provision declaring the condition as to alienation by the insured owner applicable to plaintiff's interest.

There is a conflict in the authorities as to the meaning of the provision aforesaid for expressing the manner in which the conditions of the policy referred to shall apply to an interest under the policy existing in favor of a mortgagee or any person or corporation, other than that of the insured owner. The decided weight of authority sustains the above stated contention of counsel for defendant in error. Perhaps the leading case on that side of the question is Oakland Home Ins. Co. v. Bank of Commerce, 47 Neb. 717, 66 N. W. 646, 36 L. R. A. 673, 58 Am. St. Rep. 663. At least it is the earliest case considering the precise question, and has been approved and followed in several cases in other states. In that case the policy considered was like the one in the case at bar, except that the loss was made payable to a mortgagee, and it was held, construing the provision now under discussion, that to render the general conditions referred to in the provision applicable to the interest of the mortgagee, "there must be written upon, attached or appended to the policy, relating to the interest of the mortgagee, some provisions or conditions expressing in what manner the conditions of the policy shall be so applicable."

In a case in Illinois, involving a consideration of the same provision with reference to a mortgagee named in the loss payable clause, the court held the meaning of the closing

words or clause of the provision to be: "that in case a mort-
gagee clause is added, the contract with the mortgagee shall
include only such conditions as appear in such mortgagee
clause or slip." (Queen Ins. Co. v. Dearborn Sav. L. & B.
Asso., 175 Ill. 115, 51 N. E. 717.) And in Iowa, after quot-
ing the provision aforesaid, the court said: "This means
that, in order that they become applicable to the interest
of the mortgagee, the manner thereof must be indicated by
an indorsement or some writing attached to the policy."
And there being no such indorsement or writing it was held,
as in the other case cited, that the conditions of the policy
did not apply to the interest of the mortgagee. (Christen-
son v. Fidelity Ins. Co., 117 Ia. 77, 90 N. W. 495, 94 Am.
St. Rep. 286.) The same construction of the provision in
question has been adopted in several other states, and the
interest of a third party to whom the loss was made pay-
able held to be unaffected by the conditions of the policy
referred to, where the manner in which they should apply
to such interest was not expressed in the loss payable clause.
(Welch v. British Am. Assur. Co., 148 Cal. 223, 82 Pac.
964, 113 Am. St. Rep. 223, 7 Ann. Cas. 396; Senor & Munz
v. Western &c. Fire Ins. Co., 181 Mo. 104, 79 S. W. 687;
East v. New Orleans Ins. Asso., 76 Miss 697, 26 So. 691;
Edge v. St. Paul F. & M. Ins. Co., 20 S. Dak. 190, 105 N.
W. 281; Boyd v. Thuringia Ins. Co., 25 Wash. 447, 65 Pac.
785, 55 L. R. A. 165; Stamey v. Royal Exch. Assur. Co.,
93 Kan. 707, 150 Pac. 227.)

In the California case cited, the court say: "The pro-
vision that, in the event of the existence of such an interest
in favor of the third person, 'the conditions hereinbefore
contained shall apply in the manner expressed in such pro-
visions and conditions of insurance relating to such interest
as shall be written upon, attached, or appended hereto,' was
intended to have the effect of preventing the conditions pre-
viously mentioned in the policy from applying to such in-
terest, unless the conditions should be again written upon,
attached, or appended to the policy. No other reasonable

meaning can be given to the language. It would not be necessary to write them out in full in the policy, which would be practically impossible. A few words making the provisions, or certain of them, as desired, applicable to the other interest could readily be inserted in the slip containing what is known as the 'loss payable clause' attached to the policy."

We deem it unnecessary to repeat here the reasons for the conclusion announced in the cases cited, except to say that it is based upon what is conceived to be the proper grammatical construction of the provision of the policy referring to the application of the preceding conditions to the interest of third persons, and the principle that in case of ambiguity, if the language of the provision might be deemed ambiguous, that construction should be adopted which would be more favorable to the insured, or those claiming under the policy. (Oakland Home Ins. Co. v. Bank, *supra*; Welch v. British Am. Assur. Co., *supra*.)

A contrary construction of a policy containing these provisions has been adopted in a few cases, viz.: Delaware Ins. Co. v. Greer, 120 Fed. 916, 57 C. C. A. 188, 61 L. R. A. 137; Brecht v. Law Union & Crown Ins. Co., 160 Fed. 399, 87 C. C. A. 351, 18 L. R. A. (N. S.) 197; Vancouver Nat. Bank v. Law Un. & Crown Ins. Co. (C. C.), 153 Fed. 440; Franklin Ins. Co. v. Wolff, 23 Ind. App. 555, 54 N. E. 772. But we are constrained to accept the rule announced in the cases previously cited as the proper one, believing it to be supported by the better reasoning.

3. One other point only is urged as a ground for reversal, viz.: that the action was not brought within twelve months after the loss as required by the terms of the policy aforesaid. It is provided in that policy that no suit or action thereunder, for the recovery of any claim, shall be sustainable "unless commenced within twelve months next after the fire." The fire occurred on February 19, 1911, and within twelve months thereafter, viz., February 16, 1912, the petition in this action was filed and summons is-

sued which appears to have been served, and there is no contention here that it was not properly served upon the defendant. It is contended, however, that an amendment made to the petition on the trial, which occurred on February 18, 1913, changed the cause of action, and that therefore the action must be deemed to have been commenced, within the meaning of the provision of the policy aforesaid, as of the date of the amendment. Assuming said provision to be applicable to the plaintiff, without deciding that question, the contention cannot be sustained.

The petition, in the third paragraph thereof as originally filed, alleged that on or about the 19th day of December, 1910, for and in consideration of a stated amount of premium agreed to be paid, the defendant "undertook and agreed to and with the plaintiff to insure the said plaintiff for the period of one year in the amount of fifteen hundred dollars against damage due to loss by fire of a certain frame building in Lost Springs, Converse County, Wyoming, known as the building of B. F. Billingsley." So far as the record here shows the petition was not objected to by motion or demurrer, but an answer was filed denying each and every allegation in the petition, except that the defendant is a corporation as alleged and lawfully engaged in this state, as alleged, in the business of insuring property against loss by fire, which facts were admitted. After the first witness for the plaintiff had been sworn and he had answered certain preliminary questions, defendant's counsel objected to the introduction of any testimony upon these grounds: 1. That the petition does not allege a breach of the alleged undertaking or contract of the defendant to insure the plaintiff. 2. That it does not allege that the fire occurred within the period to be covered by the alleged contract. Thereupon plaintiff's counsel asked leave to amend the third paragraph of the petition by adding "and did insure" after the words "undertook and agreed to and with the plaintiff to insure." Leave was granted to so amend by interlineation, and that appears to have been done immediately. The petition being

so amended, the defendant thereupon filed an amendment to its answer alleging as a separate defense the provision of the policy aforesaid as to the time for commencing an action for the recovery of any claim thereunder, and that by reason of said amendment to the petition a new cause of action was stated constituting in effect the commencement of a new action.

It is argued in support of this contention that the cause of action stated by the petition before amendment was the failure of the defendant to insure the plaintiff as it had agreed to do, and that the amendment resulted in changing that cause of action to one for the breach of a contract of present insurance. But we do not think the amendment amounted to a change in the cause of action. Nor do we think that the question is to be determined solely with reference to any technical difference between the terms "contract to insure" and "contract of insurance"; those terms seem to have been used interchangeably as meaning all that the latter term implies in the opinion of Chief Justice Parker in Hicks v. British Amer. Assur. Co., 162 N. Y. 284, 56 N. E. 743, 48 L. R. A. 424. We think it clear from the original petition that the action was brought, not for damages for the failure of the defendant to insure the plaintiff, but to recover the damages suffered by the plaintiff because of the fire upon a contract of insurance; and that, when construed in connection with the subsequent averments, the language of the third paragraph of the petition before its amendment, that the defendant "undertook and agreed to and with the plaintiff to insure" was intended to allege a completed contract of present insurance. The next succeeding paragraph alleged that the said building was, "at the time of the making of said contract of insurance, in course of construction," etc. It was alleged in the next paragraph that on or about the nineteenth day of February, 1911, the said building was totally destroyed by fire, "to the damage of plaintiff in an amount largely exceeding fifteen hundred dollars." And in the subsequent paragraphs it was alleged that immediately

upon the loss of the building by fire the plaintiff notified the defendant thereof and within sixty days of said loss furnished to the defendant a complete proof of loss; that within less than said sixty days the defendant waived all requirements and conditions as to notice of loss, proof of loss, appraisement and arbitration, "and all other conditions of said contract of insurance, and denied the existence of any contract of insurance whatsoever; that plaintiff has performed each and every condition on its part to be performed as required by said contract of insurance"; that the damage to plaintiff arising from said fire "and covered by said contract of insurance exceeds," etc. Then followed an averment that plaintiff had demanded of the defendant a stated sum and that no part thereof had been paid. And the prayer for judgment was for said amount, together with interest from March 8, 1911. We hold, therefore, that the action was brought within twelve months after the fire.

Having thus considered all the objections urged against the judgment, and finding no error, the judgment will be affirmed.                                                *Affirmed.*

BEARD, J., concurs.

SCOTT, J., being ill, did not participate in the decision.