No. 45,022

ABE ISAAC and BEN ISAAC, *Appellees*, v. RELIANCE INSURANCE COMPANY, *Appellant*.

(440 P. 2d 600)

Opinion filed May 11, 1968.

John J. Alder, of Kansas City, argued the cause, and *James A. Williams*, *Byron G. Larson*, *George Voss*, and *Ken W. Strobel*, all of Dodge City, were with him on the brief for the appellant.

*Bradley Post*, of Meade, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

HARMAN, C.: This is an appeal in a declaratory judgment action wherein the trial court granted summary judgment in favor of plaintiffs and against their insurance carrier. At issue is the duty of the insurer to defend, and to pay any judgment rendered, in a suit in Montana brought by a Montana landowner against plaintiffs.

Plaintiffs reside in Meade, Kansas, and as partners they farm on a large scale in Meade and Finney counties and also engage in custom combining operations outside the state. They commenced this action in the Meade county district court in August, 1966. In their petition, for a first cause of action, after alleging residence and the corporate capacity of defendant, they stated:

"2. That during the years 1965 and 1966 defendant undertook to insure plaintiffs for everything. It issued various insurance policies for which it collected premiums in excess of $3,000 per year. That under one of such policies said defendant, for a premium charge of $859, issued its Comprehensive Farm Liability Policy # CFL 9303010 in favor of plaintiffs. Under the terms of said policy defendants agreed to insure and defend plaintiffs for any loss resulting from their custom farming operations and to defend the plaintiffs in any suit

alleging property damage, even if the allegations of such suit were groundless, false or fraudulent. Defendant charged and collected an extra premium of $607 for insuring said custom farming operations.

"3. That on or about February 10, 1966, plaintiffs were sued by one LeRoy Belote in the District Court of Cascade County, Montana, for the sum of $20,000 alleging damages resulting from the custom cutting operations of plaintiffs. Although plaintiffs have reason to and do believe that said suit is groundless, that they were not negligent and did not breach any agreements as alleged, defendant has failed and refused to take charge of and defend said suit. Defendant even refused to make a detailed investigation of the facts alleged in such action. As a part of this petition plaintiffs attach hereto a copy of said Farm Liability Policy and a copy of the Petition and other pleading filed in the Montana Courts.

"4. Plaintiffs seek a Declaratory Judgment for interpretation of said insurance contract, and a judgment requiring defendant to defend said suit and pay any judgment rendered against plaintiffs."

In a second cause of action plaintiffs sought damages for alleged breach of agreement to defend them in the Montana claim.

Attached to plaintiffs' petition was a copy of their insurance policy issued by defendant and a copy of the Montana complaint filed by LeRoy Belote against them. This complaint was as follows:

"COUNT ONE

"I.

"Plaintiff is informed and believes, and on such information and belief alleges that the Defendants at all times mentioned herein were doing business in the State of Montana as a partnership and were engaged in the custom harvesting and hauling of agricultural crops.

"II.

"That the Plaintiff is the owner of approximately 626 acres of real property situated in the County of Glacier of the State of Montana; that said acreage was, during the 1965 summer growing season, planted in the following grain crops, to wit: 384 acres of barley and 242 acres of wheat.

"III.

"That during the early part of the month of August, 1965, Plaintiff entered into a contract with the Defendant Abe J. Isaac whereby said Defendant Abe J. Isaac, for a valuable consideration, agreed on behalf of said partnership between himself and Defendant Ben J. Isaac, to harvest and haul for Plaintiff the said grain crops growing on said real property as soon as such crops were ready to be harvested.

"IV.

"That the Defendants have not performed said agreement in that they failed and neglected to harvest said crops according to the terms and conditions of their agreement with Plaintiff as aforesaid.

"V.

"That by reason of such breach of said agreement by the Defendants, said crops were left standing in the field, exposed to the elements, and as a direct and proximate result of such breach, said crops were damaged and were partially destroyed, all to the Plaintiff's damage in the sum of TWENTY THOUSAND AND NO/100 DOLLARS ($20,000.00).

"COUNT TWO

"I.

"Plaintiff re-alleges Paragraphs I, II, III of COUNT ONE herein.

"II.

"That thereafter said Defendants undertook and commenced the harvesting of said crops but negligently failed and refused to complete said harvesting as aforesaid and said crops were, as a result of said negligence of said Defendants, left standing in the field and exposed to the elements.

"III.

"That as a direct result of said negligence of said Defendants as aforesaid said crops were damaged and were partially destroyed all to the damage of the Plaintiff in the sum of TWENTY THOUSAND AND NO/100 DOLLARS ($20,000.00).

"WHEREFORE, Plaintiff prays for judgment against the said Defendants and each of them as follows:

"For the sum of TWENTY THOUSAND AND NO/100 DOLLARS ($20,000.00) as and for damages to said grain crops, for Plaintiff's costs of suit herein, and for such other and further relief as to the Court may seem just in the premises."

Also attached to plaintiffs' petition was their answer and counter-claim to the Montana complaint. (Plaintiffs' insurer filed this pleading in plaintiffs' behalf under a reservation of rights' agreement, then withdrew from further participation in the case. At the time of oral argument of this appeal nothing further had occurred in the Montana suit.)

The defendant insurer filed its answer to the declaratory judgment action, admitting issuance of the insurance policy, payment of premiums, filing of the Montana complaint as alleged by plaintiffs, and its refusal to defend that action. It alleged that under the terms of the policy it had no liability to defend the Montana action and would not be liable to plaintiffs for any judgment therein. It conceded the question of its liability to defend was a proper subject for declaratory judgment but denied liability for any judgment in the Montana action could in any event be determined in a declaratory judgment action.

Eventually, after other proceedings in the trial court which we need not notice, plaintiffs filed their motion for partial summary judgment against the defendant in which they asked for a declaratory judgment that defendant was obligated under its policy to

defend the Montana action and further to pay any judgment up to the policy limits which might be rendered against plaintiffs in the Montana action, if rendered upon the facts and theories alleged in the Montana complaint. The trial court sustained this motion, finding there were no exclusions in the policy which would deny coverage to the plaintiffs under the facts and theories alleged in the Montana complaint, and further found:

"The terms of the insurance contract here involved are broad enough to include, and the court finds that it does include, liability coverage to loss arising while insured is engaged in 'custom farming operations,' whether it arises from negligence, breach of custom farming contract, or a combination of negligence and breach of contract."

Defendant has appealed.

The record here does not clearly indicate just what the trial court had before it, aside from the pleadings, at the time summary judgment was rendered. Plaintiffs have counterdesignated certain material for inclusion in the record on appeal. That material is so included, and we assume it was before the trial court. This consists of defendant's answers to written interrogatories propounded by plaintiffs, an affidavit by plaintiffs stating their legal opinion of this lawsuit, a discovery deposition of the local soliciting agent for defendant, and a statement entitled Memorandum of Interview which evidently is a narrative statement of one of the plaintiffs made March 8, 1966, to a Montana attorney acting as investigator on behalf of defendant.

The risks insured against, and the duty to defend, under a policy of liability insurance are determined initially by the terms of the policy. The overriding question in this appeal is the obligation of defendant under the policy with respect to the Montana suit. We must therefore examine the pleadings in that action in the light of the terms of the policy.

We turn first to the Belote complaint. In count one Belote pleads the contract into which he entered with plaintiffs—to harvest and haul his grain crops as soon as they were ready to be harvested. Belote then alleges the plaintiffs did not perform the contract in that they did not harvest the crops as agreed, and further, that the crops were left standing in the field, exposed to the elements, and as a result of the breach, the crops were damaged and partially destroyed.

At this point it may be stated, and both sides concede, this

count states a cause of action for breach of contract—the breach being failure to cut the grain crops.

Count two reasserts the same allegations but says plaintiffs "negligently" failed to harvest the crops and left them standing in the field, exposed to the elements, and as a result the crops were damaged and partially destroyed. Plaintiffs refer to this count as one for "negligent breach of contract," but do not make clear just what is meant. The obvious design of count two seems to be to plead a tort action. However, the only difference between the two counts is the addition of the term "negligently."

Defendant insurer contends all that is pleaded in count two is the same breach of contract set out in count one—failure to cut the crops. We are inclined to agree. Although this determination must be made from the pleading, when we look at the instrument entitled Memorandum of Interview, the conclusion is reinforced. In this document, evidently supplied by plaintiffs, Mr. Abe Isaac purportedly related his version of events in Montana out of which the Belote lawsuit arose. He stated he and his brother had previously cut wheat for Belote over a period of several years; that Belote had had other cutters in besides plaintiffs; that Belote consistently tended to want his wheat cut before it was ready which fact could be verified by the Cut Bank elevators; that after agreement as to price Belote indicated on September 2, 1965, his wheat was ready for cutting; four of plaintiffs' machines commenced cutting on September 7 or 8; the wheat was borderline between green and ripe but Belote wanted to keep cutting; the grain which was cut was taken to the elevator where the operator told him (Abe) the grain was unfit for storage because it was too green and no more grain like it would be accepted; he and Belote looked at other areas where grain might be cut in patches but found them all too green; they cut some borderline barley, then it commenced to rain; the rains continued on through September and plaintiffs sent several machines back to Kansas as their crews, composed largely of college boys, were commencing to return to school; by September 24 only five of plaintiffs' combines remained in the Cut Bank area; they did cutting at other farms where it was drier than at Belote's; meanwhile Belote had secured other cutters for his grain; plaintiffs returned to Belote's and commenced cutting again October 5 through October 8; on October 12 Belote paid plaintiffs for cutting 218 acres of barley and 242 acres of wheat, the payment being by check for $2,544.25

drawn on a Great Falls bank; the only controversy at the time of settlement concerned grain which had been cut and dumped on the ground; on October 18 plaintiffs presented the check to the Great Falls bank and were told there was insufficient funds to cover it; Belote told plaintiffs over the telephone he must have checked his daughter's account instead of his own and that he had sufficient funds deposited to cover the check; on November 3 the check was returned to the Meade bank with the notation payment had been stopped; again on the telephone, Belote indicated he was dissatisfied because plaintiffs had "moved out."

Nowhere in the Belote pleading is there any allegation that plaintiffs damaged his grain by improper cutting procedures, that the work was done in a negligent manner, or that plaintiffs did any act which resulted in damage to the grain. All that is alleged is that, insofar as the damaged grain was concerned, plaintiffs did not cut the crops with the result they remained standing and were exposed to the elements. The complaint is simply that plaintiffs did nothing. Any duty owed by plaintiffs to Belote respecting timely cutting of the wheat was established by contract and Belote's remedy for lack of timeliness would necessarily be for breach of that contract. Essentially, despite addition of the term "negligently," there was but one cause of action stated, and that was for damages for breach of contract in failing to cut the grain.

Plaintiffs in effect acknowledge this in their brief when they state:

"A study of the petition filed against [plaintiffs] by Mr. Belote reveals that the only contention made is that his crops were damaged or destroyed by the elements because of some negligent *failure* of [plaintiffs] in their custom cutting operations." (Emphasis supplied.)

Turning to the policy, it is labeled and described as a "comprehensive farm liability policy." This is a type of liability policy designed specifically for the protection of those engaged in farming. However, the basic principles governing the construction of insurance policies in general are fully applicable thereto (see anno. 8 A. L. R. 3d 916).

The declaration page of the policy issued to plaintiffs states the limit of liability is "$50,000. each occurrence," and makes the coverage applicable to custom farming. Other coverage with which we are not concerned is also provided.

Part One of the policy states, so far as pertinent here, the insuring agreement undertaken by defendant as follows:

"Coverage L—Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the company shall defend any suit against the insured alleging bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient."

Under "Definitions" in the policy we find the following:

" 'custom farming' means farming or roadside mowing operations performed for others for a charge, under contract entered into by the named insured. Farming operations performed for others on a neighborly exchange basis shall not be considered 'custom farming;' "

and,

" 'property damage' means injury to or destruction of property, including loss of use thereof. . . . ' "

Under "Policy Period" it is stated:

"This policy applies only to occurrences during the policy period."

The policy also contains certain exclusions which need not be mentioned in view of our determination of the primary issue.

Does this policy cover damages for breach of contract where the breach consists of a total failure to perform? Plaintiffs broadly argue the policy insured them against any loss arising out of their custom farming operations. No such language appears in the policy. We are cited to no authority, and have discovered none, supporting plaintiffs' view. Plaintiffs' contention seems to be that by virtue of the definition in the policy of custom farming the nature of the policy is extended from a liability policy to one insuring against all losses, of whatever kind, so long as they are connected with custom farming. We think the statement in the policy as to that which constitutes custom farming was meant only as a definition and in no way expanded the basic liability coverage of the policy. That coverage was "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damage because of . . . property damage. . . ." The policy contains no agreement to pay damages for breach of contract and the measure of damages for breach of contract where the breach consisted of a total failure of performance would be different from that stated in the policy.

The policy uses the terms "each occurrence" and "occurrence" in connection with the liability covered. The word "occurrence" means an event or happening—it does not refer to a condition. It appears

the policy is the ordinary one insuring against liability for casualty loss (see I Couch on Insurance, 2d ed., § 1:27), and is to be distinguished from a performance bond which guarantees that the contractor will perform the contract and guarantee against breach of contract (17 Am. Jur., 2d, Contractors' Bonds, § 1; 13 Couch on Insurance, 2d ed., §§ 47:5, 47:6). Plaintiffs apparently seek to convert the policy into this latter type. We are aware of no theory under which the policy can be so interpreted.

There is no occasion, and we would not attempt, to delineate ultimate limits of coverage of the policy in question. All we do hold is that the policy provided no coverage for breach of contract as alleged in the Montana suit. It follows there was no duty on defendant's part to defend that action. An insurer is not bound to defend a suit on a claim not within the coverage of the policy even though under the terms thereof it is obligated to defend all suits brought against the insured whether groundless, false or fraudulent (*Leonard v. Maryland Casualty Co.*, 158 Kan. 263, 146 P. 2d 378; *Hoffine v. Standard Accident Ins. Co.*, 191 Kan. 63, 379 P. 2d 246).

The judgment of the district court was erroneous and it is reversed.

APPROVED BY THE COURT.

FATZER, J., dissents.