64

(No. 882,008—Decided January 15, 1973.)

Court of Common Pleas of Cuyahoga County.

*Messrs. Rini & Hecht* and *Mr. Ralph V. Cosiano,* for plaintiffs.
*Reminger & Reminger,* L. P. A., and *Mr. Mario C. Ciano,* for defendant.

Bacon, J. The facts are: Ted and Sabina Sykes, for a premium of $168, had in force for three years commencing June 13, 1967, a "home owners" policy. It "covered" the dwelling for $20,000, other structures $2,000, personal property $8,000, for risks of "fire and extended hazards," living expenses $4,000 in event of disaster.

And, under Section II, Coverage (E), their insurer, The Midwestern Indemnity Co., agreed to pay, limit $25,-000, on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, and to defend any suit against the insured alleging bodily injury or property damage and seeking damages which are payable under the terms of the policy, even if any of the allegations of the suit are groundless, false or fraudulent; and, to pay under Coverage (G) for loss of property of others caused by an insured, meaning damage or ruin.

This policy included under a section headed "Special Exclusions," the agreement that Section II did not apply to Coverage (E) for "bodily injury or property damage caused intentionally by or at the direction of the insured;" nor to Coverage (G) as "to loss caused intentionally by an insured over the age of 12 years."

In July 1969, Case No. 875910 in this court, William and Rosalie Evans, adjoining land owners, sought a mandatory injunction and other equitable relief against Ted and Sabina Sykes. The Evans' complaint stated that the Sykes "deliberately and wilfully interfered with, blocked and dammed up" a natural watercourse existing upon the adjoining properties; that on May 6, 1969, Sykes "deliberately and wilfully blocked the natural draining and flow of surface waters" causing "flooding and overflow" damaging the Evans' property. That Evans removed such obstruction; that Sykes "again deliberately and wilfully" obstructed and blocked said watercourse, as to "recreate and recause" the flooding; that Sykes "refused to abate said conditions and nuisance" thereby created; and that on about June 14, 1969, said watercourse "was again blocked (by Sykes) by placing in (same) stones, dirt * * * to create another stoppage * * * creating stagnant waters, (and) a nuisance * * *."

A second cause of action was alleged, incorporating all of the allegations asserted for the mandatory injunction and adding that on July 4, 1969, there was recurrence of flooding that caused $2,000 damages to Evans' basement and swimming pool.

Evans prayed for an order directing the co-defendant, city of North Royalton, to abate the nuisance, restraining Sykes from blocking the watercourse, and ordering Sykes to remove the obstruction and to maintain a watercourse as to convey surface waters into a certain culvert under Abbey Road. Damages of $2,000. were sought for the flooding of July 4, 1969, $750 for flooding of May 8, 1969, and $10,000 for depreciation of the Evans' property "by the overt acts" of the Sykes.

The insured, Ted and Sabina Sykes, demanded that The Midwestern Indemnity Company defend the action. This the insurer declined, saying the matter fell within the exclusions of the policy.

On March 24, 1970, Ted and Sabina Sykes, commenced this action, No. 882008, seeking a judgment declaring that the damages as alleged in the Evans' complaint are within the terms of its policy, that the insurer was obligated to defend, and to pay any judgment against them. Before this matter could be heard, Ted and Sabina Sykes chose counsel and successfully defended the Evans' complaint at an expense of $3,128.00. Whereupon, the prayer herein was amended asking judgment in said sum, and the Sykes' attorneys fees herein.

The sum of $850 has been agreed as reasonable counsel fees for the Sykes in prosecuting this action in the event that the court finds for the Sykes, and finds further that the Sykes are entitled to such expense.

This matter was submitted upon a stipulation of facts, exhibits, which include the insurance policy, and the Evans' petition. Confining consideration to the policy and such petition, Ted J. Sykes and Sabina Sykes must prevail against The Midwestern Indemnity Company.

The sole test as to the duty of an insurance company, under a policy of liability insurance to defend an action against the insured, is the allegations of the petition in the action against the insured, and where such petition brings the action within the coverage of the policy, the insurer is required to make defense regardless of the ultimate outcome of the action or the liability to the insured. *Lessak*

v. *Metropolitan Cas. Ins. Co. of New York* (1958), 168
Ohio St. 153, 151 N. E. 2d 730; *Socony-Vacuum Oil Co.* v.
*Continental Cas.* (1945), 144 Ohio St. 382, 59 N. E. 2d 199.

An excellent case pointing up the wisdom of adhering
to that rule is found in the recent report of *Burger* v. *Continental Nat. American Group* (1971), 32 Ohio Misc. 161.
One Frank Eisenhauer was fatally injured on premises of
Norwalk Truck Lines by one Burger, tractor-trailer driver
for P & P Transport Co. Counsel for Eisenhauer's execu--
trix in an earlier wrongful death action of necessity joined
Burger and P & P Transport Co., as defendants, although
Nationwide Mut. Liability Ins. Co., the latter's insurer,
insisted that Burger, at the time of the accident, was actu-
ally the agent of Norwalk, the decedent's employer.

When Norwalk's insurer, Continental Nat. Group, re-
fused to defend, Nationwide sought a declaratory judg-
ment that the court declare which company owes a duty
of defense. Norwalk pointed out that there was no way
Norwalk could be liable, because if Nationwide was correct
in the matter of agency, Norwalk and Burger immediately
became immune to liability under the "fellow servant" rule,
R. C. 4123.741. The court aptly pointed out that the issue
of whether the decedent was an employee of P & P or
Norwalk at the time of the accident is immaterial to the
duty created in Nationwide's policy to defend all suits,
whether "groundless, false or fraudulent." The petition
claimed Burger was working for P & P at the time, and
the court well said that Continental should not be expected
to defend a suit to which its insured was not and never
would be made a party.

As bearing on this case, the *Burger* decision illustrates
only that deviation from settled principles will likely re-
sult in chaos. And, in this case, counsel for The Midwest-
ern Indemnity Company agree that the obligation of the
liability insurer to defend an action against the insured
is to be determined by the allegations of the petition in the
action against the insured.

Stripped of surplusage, then, William and Rosalie
Evans charged that several times Ted and Sabina Sykes

dammed and blocked a watercourse existing for drainage of surface waters, that flooding occurred, which damaged the structures and lands of William and Rosalie Evans. An injunction was sought to restore the drainage, and an award in money for the property damage.

The acts are alleged deliberate and wilful, but they were not charged as intending harm to the Evans' property, nor that such was their purpose in damming or blocking the watercourse. The Midwestern Indemnity Company states, however, that it being alleged Ted and Sabina deliberately created the conditions, which resulted in the damage, said to constitute a nuisance, it follows that Ted and Sabina "caused intentionally" the damages to William and Rosalie.

Not so! The reasoning of Judge Cardozo in the case of *Messersmith* v. *American Fidelity Co.* (1921), 232 N. Y. 161, 133 N. E. 432, 19 A. L. R. 876, is appropriate.

"Injuries are accidental or the opposite, for the purpose of indemnity, according to the quality of the results rather than the quality of the causes. The field of exclusion would be indefinitely expanded, if the defendant's argument were pursued to the limit of its logic. Every act, if we exclude, as we must, gestures or movements that are automatic or instinctive, is wilful, when viewed in isolation and irrespective of its consequences. An act ex vi termini imports the exercise of volition. Holland, Jurisprudence, 8th ed. pp. 93, 94."

The use of the word "act" thus imports "intention," or a determination of the will. In fact, to import intention, the usual allegation in a legal proceeding is that it was a "wilful act." So if an insurer follows the suggestion advanced in *Baldinger* v. *Consolidated Mut. Ins. Co.* (1961), 15 App. Div. 2d 526, 222 N. Y. Supp. 2d 736, affirmed (1962), 11 N. Y. 2d 1026, 230 N. Y. Supp. 2d 25, 183 N. E. 2d 908, that an ambiguous exclusion can be avoided only by rewording it to exclude liability "for an unintentional injury resulting from a deliberate act of the insured"—then the liability coverage becomes extremely narrowed, if not meaningless. Virtually all acts being wilful, and most

injury unintentional, insurers would be obligated to indemnify and defend, under an exclusion so worded, in a minute number of cases.

Had The Midwestern Indemnity Company put in force a comprehensive liability policy with an exclusion compelling interpretation that unintended harm from intentional acts was not within the policy, when, if ever, as Judge Cardozo pointed out, would the insured have coverage? So worded, every action founded upon negligence or tort is eliminated, the injury being unintended in nearly every case. Surely it was intended that Ted and Sabina have coverage in such matters!

To cite distinctions attempted in the reports where the petition prays for injunction as well as damages, or the conditions created constitute a nuisance, would unduly draw out this opinion without effect upon the conclusion.

Certainly Ted and Sabina Sykes are entitled to their counsel fees in defense of the action brought by William and Rosalie Evans. And the court turns now to their counsel fees as plaintiffs in this action.

Ted and Sabina Sykes were compelled to bring this action by the unjustified refusal of their insurer to defend the Evans' suit. How can you say, then, that incidental, unavoidable counsel fees are not an element of damages?

The inequity of excluding legal fees in the successful prosecution of declaratory judgment by an insured is demonstrated by the case of Doyle v. Allstate Ins. Co. (1956), 1 N. Y. 2d 439, 154 N. Y. Supp. 2d 10, 136 N. E. 2d 484, reversing (1955), 1 App. Div. 2d 738, 147 N. Y. Supp. 2d 200. There the insurer refused to defend a complaint that the barking of insured's dogs destroyed quiet enjoyment and impaired the value of adjoining property. The insured engaged counsel, who successfully defended, charging $250, when the injunction sought was denied. To establish the breach required an appeal from adverse decisions in the trial and appellate divisions, which prevailed in the court of last resort.

Doyle discovered he had lost although he had won. Attorneys fees to establish his right, a reasonable $350,

exceeded the $250 award for the insurer's refusal to defend the injunction proceedings. Refusing recovery of counsel fees incurred in the action brought against the insurer to recover legal fees and expenses incurred in the action which the insurer failed to defend, Judge Conway quoted Clark in his work on the New York Law of Damages, Vol. I, p. 145.

"The law considers, as a general rule, the taxable costs as adequate recompense * * *."

But declaratory judgment has been greatly broadened, its use expanded. It appears particularly appropriate that a court by rule or law award reasonable attorney fees according to the value they bear on the controversy settled. Ordinarily there is not an award of money from which the successful party may pay his counsel. The one who caused the litigation makes his adversary whole only by payment of counsel fees if his adversary prevails. The action, particularly in this case, is one where clearly taxable costs are not an adequate recompense.

In fact, unless the trial court has discretion with regard to counsel fees, one may discover he has no practical remedy for the breach of duties owed to him, as the result in *Doyle* v. *Allstate, supra,* illustrates all too well.

This court is aware also of the case of *Motorists Mut. Ins. Co.* v. *Trainor,* No. 440 Docket of the Court of Appeals of Medina County, wherein it was decided the insurer was obligated to defend a 12-year-old insured, alleged to have bumped another infant resulting in loss of vision of one eye, and that the insurer was responsible for attorneys fees therein and also attorney fees for bringing the declaratory judgment action. The justice of the court's conclusion is appealing. Likewise the court's reasoning.

Ted and Sabina Sykes are entitled to $3,128 for prior counsel fees, and to $850 for their counsel fees in successfully prosecuting this action.