AETNA INSURANCE COMPANY, Appellant (Third–Party Defendant),

v.

William LYTHGOE, dba Lythgoe Construction Company, Appellee (Third–Party Plaintiff).

No. 5261.

Supreme Court of Wyoming.

Oct. 31, 1980.

Houston G. Williams of Williams, Porter, Day & Neville, P. C., Casper, for appellant.

Donald R. Winship of Winship & Feeney, P. C., Casper, for appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

THOMAS, Justice.

The question posed in this appeal is one of coverage to defend an insured under a liability insurance policy. More particularly, the case requires the selection and application of a "completed operations" clause from either an insurance policy issued to the appellee by the appellant or a renewal policy. The district court ruled in favor of coverage, and Aetna Insurance Company has appealed from that judgment. We will affirm the judgment of the district court.

A summary of the events leading to the coverage issue can be found in *Brubaker v.*

*Glenrock Lodge International Order of Odd Fellows,* Wyo., 526 P.2d 52 (1974). For our present purposes, it is sufficient to note that Katherine Brubaker instituted the action against Glenrock Lodge International Order of Odd Fellows. She sought to recover damages for injuries she suffered when a stairway collapsed while she was using it. She was a lessee of the basement of the lodge building. Glenrock Lodge International Order of Odd Fellows brought a third–party action against Lythgoe (appellee here) seeking to be indemnified by Lythgoe for any liability to Brubaker. Lythgoe had been employed by the lodge to do some carpentry work, which work included the relocation of the stairway. When Aetna Insurance Company refused to defend Lythgoe, he brought this third–party action to require Aetna Insurance Company to assume his defense or reimburse him for his expenses in defending the action.

As framed by the appellant, the issues on appeal are as follows:

"1. Was coverage afforded Lythgoe by Aetna under a policy of insurance under the facts of this case?

"(a) Was the operation 'completed'?

"(b) Which policy applies?

"(c) Are the key operative terms defined?

"(d) Are the exclusions of coverage clearly expressed?

"2. Was Aetna, in any event, obligated to defend Lythgoe on the *Brubaker* claim?"

The appellee in his brief presents a more detailed statement of his perception of the issues. Without reciting his position in detail, he claims that the provisions of the earlier policy govern over those of the renewal policy. He then urges the application of the "completed operations" exclusion clause in the earlier policy, but argues in the alternative that his operations had not been completed even under the renewal policy. In further defending the appeal, the appellee contends that the pleadings of the personal injury case which invoked the

duty to defend came within the policy coverage and that there is no suggestion in the Brubaker personal injury complaint leading to relief for Aetna under the "completed operations" exclusion. He further urges that the doctrine of reasonable expectations should be adopted in the State of Wyoming.[1]

Aetna Insurance Company relies upon the proposition that Lythgoe's operations on the job out of which the personal injury claim by Mrs. Brubaker arose had been completed under the provisions of Policy Number CG 75 14 19. The language of the policy on which Aetna Insurance Company relies is as follows:

"*Exclusions*

"This insurance does not apply:

&ast; &ast; &ast; &ast; &ast; &ast;

"(m) to *bodily injury* or *property damage* included within the *completed operations hazard* or the *products hazard* ;"

In the definitions section of that policy appears the following language:

" '*completed operations hazard*' includes *bodily injury* and *property damage* arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily injury* or *property damage* occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the *named insured.* 'Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

"(1) when all operations to be performed by or on behalf of the *named insured* under the contract have been completed,

"(2) when all operations to be performed by or on behalf of the *named insured* at the site of the operations have been completed, or

1. Having concluded to resolve this appeal on other grounds, the issue raised concerning the

doctrine of reasonable expectations is not discussed any further.

"(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

"Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed."

Lythgoe relies upon the language of policy MCL 27 20 80. In the Definition of Hazards section of that policy appears the following language:

"Division 4—Products—Completed Operations.

\*    \*    \*    \*    \*    \*

"(2) operations, including any act or omission in connection with operations performed by or on behalf of the named insured on the premises or elsewhere, whether or not goods or products are involved in such operations, *if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured* ; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be 'operations' within the meaning of this paragraph: (a) pick–up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division 1 of item 4 of the declarations specifically includes completed operations." (Emphasis added.)

The Exclusions section of this policy, which was the earlier of the two policies provides:

"This policy does not apply:

\*    \*    \*    \*    \*    \*

"(c) under division 1 of the Definition of Hazards, and under coverage C, to (1) the Independent Contractors Hazard or (2) the Products—Completed Operations Hazard;"

There is no question that the second policy states on its face that it is a renewal of the policy upon which Lythgoe relies. From the record, it appears that Lythgoe directed to Aetna Insurance Company a Request for Admissions, which included the following request:

"1. The endorsement page of Aetna Policy Number CG–75–14–19, a copy of which is attached hereto [this endorsement provided coverage for completed operations], was never a part of Aetna Policy Number MCL–27–20–80."

The Answer to Request for Admissions by Aetna Insurance Company with respect to their request quoted above states:

"1. Defendant admits that the endorsement page to Policy No. CG–75–14–19 attached to said request was never a part of Policy No. MCL–27–20–80 *provided, however, that CG–75–14–19 was a renewal of MCL–27–20–80.*" (Emphasis added.)

■ With respect to which policy should be looked to as the controlling one in this factual situation, we espouse the language of the United States Court of Appeals for the Tenth Circuit:

" \*  \*  \* When a renewal policy is issued, it is presumed, unless a contrary intention appears, that the parties intended to adopt in the renewal policy the terms, conditions and coverage of the expiring policies." *Pearl Assur. Co. v. School Dist. No. 1 In San Miguel County, Colo.*, 10 Cir., 212 F.2d 778, 782 (1954).

This language was quoted with approval by the United States Court of Appeals in *Government Employees Insurance Company v. United States*, 10 Cir., 400 F.2d 172 (1968). In this latter case the court also noted that:

" \*  \*  \* [I]t is the general rule that an insurance company is bound by the great-

er coverage in an earlier policy where the renewal contract is issued without calling to the insured's attention a reduction in policy coverage. * * * " *Government Employees Insurance Company v. United States,* supra, 400 F.2d at 175.

This same proposition is found in *Noyes Supervision, Inc. v. Canadian Indemnity Company,* 487 F.Supp. 433 (D.Colo.1980); *Giles v. St. Paul Fire & Marine Insurance Company,* 405 F.Supp. 719 (N.D.Ala.1975); *Commercial Insurance Company v. American and Foreign Insurance Association,* 370 F.Supp. 345 (D. Puerto Rico 1974); and *Industro Motive Corporation v. Morris Agency, Inc.,* 76 Mich.App. 390, 256 N.W.2d 607 (1977).

■ In 17 Couch on Insurance 2d, § 68:63, p. 699 (Lawyers Cooperative Publishing Co. 1967), can be found the consistent propositions that unless the insurer calls to the attention of the insured changes in the coverage or conditions of the policy the insured has a right to presume that they are the same as those in the policy renewed even in light of the failure of the insured to examine the policy. The obligation is with the insurer to specifically inform the insured of the changes in the terms of the policy which is a renewal policy. To the same effect are cases cited in Annotation 91 A.L.R.2d 546 (1963), and this view apparently represents a clear majority rule. All of these statements are consistent with the principle of liberal construction of insurance policies in favor of the insureds. From the record, there is no dispute between the parties that when the second policy was issued Lythgoe's attention was not, by correspondence or otherwise, specifically directed to the adjustment in language relating to completed operations.

Our disposition of this case, then, is premised upon language from *W. N. Leslie, Inc. v. Travelers Insurance Company,* 264 S.C. 408, 215 S.E.2d 448 (1975), in which the court said at 215 S.E.2d 450:

"The primary contention of the appellant, Travelers, is that the insured's operations were completed within the intent and meaning of the policy and coverage ac-

cordingly terminated prior to the injury to Mrs. McDaniel. Its contention that it was entitled to a judgment n. o. v. on this ground has to be considered in the light of two elementary principles of law. The policy must, of course, be liberally construed in favor of the insured, with any ambiguity therein being resolved in favor of coverage. And, the evidence and all of the inferences reasonably deducible therefrom must be viewed in the light most favorable to the plaintiff–respondent. * * * "

In *W. N. Leslie, Inc. v. Travelers Insurance Company,* supra, the Supreme Court of South Carolina had before it a situation markedly similar to the facts in this one. The policy language presented was that of Policy CG 75 14 19, the second policy in this case. The court there held that even under the specific standards found in the second policy the operations had not been completed:

" * * * Under the facts and circumstances of this case the court certainly would not be warranted in holding, as a matter of law, that the slight use to which the stairway had been put prior to the injury was putting such to its intended use within the contemplation of the policy, and the insurer thereby relieved of liability. Even viewed in the light most favorable to the insurer this made only an issue for the jury." *W. N. Leslie, Inc.,* supra, 215 S.E.2d at 451.

■ It is apparent that the coverage afforded Lythgoe was more limited under the second policy than it was under the first policy. The effect of the exclusion in the first policy was that no coverage would be afforded "after such operations have been completed." The exclusionary language of the second policy is substantially the same, but it incorporates the more specific definition of completed operations which is quoted above. We eschew the specific standards in the second policy in favor of the more general language in the first policy. If the language of the first policy is applied the question of whether the operations have been completed is one for the trier of fact.

*W. N. Leslie, Inc. v. Travelers Insurance Company,* supra. Cf., *Daniel v. New Amsterdam Casualty Company,* 221 N.C. 75, 18 S.E.2d 819 (1942). The only requirement then remaining is whether there is any evidence to support the conclusion of the district court as the finder of fact that the operations had not been completed.

■ The record testimony with respect to the stage of the operations is that of Lythgoe, as follows:

"Q. Now, in March of 1968, did you do some work for the Glenrock Lodge of the International Order of Odd Fellows?

"A. Yes, I did.

"Q. Would you describe that for us?

"A. At the time of the remodeling, of which is now Kay's Clothing Store, they decided that they would like to have the stairs changed from one direction to the other for better access, so I proceeded to take the stairs apart and turn them around and replace them on the opposite direction.

"Q. You didn't build those stairs, did you?

"A. No, I did not.

      \*     \*     \*     \*     \*     \*

"Q. Mr. Lythgoe, at the time Mrs. Brubaker was injured, had you completed your work in the lodge?

"A. There might have been some other small things that we had to do but that part of it was completed.

"Q. That is the stairway, which was involved in her injury had been completed?

"A. Yes, that part was.

"Q. What other things are you talking about that might have not been done?

"A. There might have been a few touch ups and things like that.

"Q. Was that in the same area?

"A. Yes, in the same area." (Emphasis added.)

Under the general language of the first policy, we hold that the testimony of Lythgoe is sufficient to support the trial court's finding of fact that the operations had not been completed. While our previous decision arises in an entirely different context, our judgment is that this approach and result are consistent with *Tottenhoff v. Rocky Mountain Construction Company, Inc.,* Wyo., 609 P.2d 464 (1980), which involved a question of when a roofing contract had been completed for purposes of applying our mechanic's lien statute, § 29–2–109, W.S.1977. Referring there to earlier Wyoming cases, the court said at 609 P.2d 567:

"\* \* \* Where the critical date involves installation of minor items or performance of a trifling service, *the ultimate decision rests with the trier of fact* who must consider all the circumstances which bear on the question of good faith and necessity in relation to prolongation of the period of construction." (Emphasis added.)

■ There is no dispute over the proposition that the duty of an insurer to defend is broader than the duty of the insurer to indemnify, *Lanoue v. Fireman's Insurance Companies,* Minn., 278 N.W.2d 49 (1979); *Boston Insurance Company v. Maddux Well Service,* Wyo., 459 P.2d 777 (1967). Cf., *Flori v. Allstate Insurance Company,* R.I., 388 A.2d 25 (1978).[2] Neither is there any dispute as to the proposition that the decision as to the duty to defend is not made on the basis of the ultimate liability of the insurer to indemnify the insured or on the basis of whether the underlying action is groundless or unsuccessful. *Employers' Fire Insurance Company v. Beals,* 103 R.I.

---

2. Since we do not have the complete pleading file in this record we cannot apply the pleading test as was done in *Flori v. Allstate Insurance Company,* R.I., 388 A.2d 25 (1978). Appellant argues in its brief that the complaint discloses that Lythgoe's operations were completed. *Alm v. Hartford Insurance Company,* Wyo., 369 P.2d 216 (1962), appears to adopt the pleading test, and the court there says that ambiguity in a complaint for which coverage is claimed should be resolved against an insurance company. Of like tenor are *Insurance Company of North America v. Forty–Eight Insulations, Inc.,* 451 F.Supp. 1230 (E.D.Mich. 1978); *Afcan v. Mutual Fire, Marine and Inland Insurance Co.,* Alaska, 595 P.2d 638 (1979); and *Sykes v. Midwestern Indemnity Company,* 38 Ohio Misc. 64, 311 N.E.2d 906 (1978).

623, 240 A.2d 397 (1968); *Burger v. Continental National American Group*, 6th Cir., 441 F.2d 1293 (1971).

We conclude that coverage to defend did exist under the first policy.[3] There was evidence to sustain the district court's implied finding that the operations were not completed. The allegations in the pleading in this case do not disclose a situation in which no coverage was afforded. Applying language of the first policy in the factual context of this case did structure a question of fact which the district court by implication resolved in favor of Lythgoe, and there is evidence to support that implied finding. Under these circumstances, the judgment of the trial court should be affirmed because it effectively recognizes the broader duty of insurer to afford a defense to his insured even though indemnification coverage may be in question.

The judgment of the trial court is affirmed.

ROONEY, Justice, dissenting, with whom RAPER, Chief Justice, joins.

The majority opinion finds liability insurance coverage of appellee under the first policy issued to him by appellant, and it recognizes that such policy does not provide coverage "after such operations have been completed." It then finds that the operations were not completed, relying on appellee's testimony that "there *might have been* some other small things that we had to do but that part of it [the stairs] was completed" and that "there *might have been* a few touch ups and things like that" (emphasis added.)

We are concerned here with an injury resulting from carpenter work in moving a stairway. Both parties acknowledge that the work on the stairs was completed. It borders on the incredible to find the operation of moving a stairway was incomplete

because "there might have been" a few touch ups remaining. The situation is completely different from that in *Tottenhoff v. Rocky Mountain Construction Co.*, Wyo., 609 P.2d 464 (1980), quoted from in the majority opinion in an effort to justify the reach for reason there made. In the *Tottenhoff* case, the operation to be accomplished was the roofing of a house. Shakes were installed, but the metal flashings were not. It was agreed that the metal flashings were "an integral part of the roofing work done" in order "to protect the building from the elements," otherwise it would not be "watertight." We held that the operation was not completed. But the situation is a far cry from that wherein "there might have been a few touch ups." The situation in the *Tottenhoff* case would approach some similarity to this case if the remaining work was to pick up two or three of the old shingle scraps from the lawn. The result in such case could then have been different. See quotation, infra, from 12 Couch on Insurance 2d and cases there cited in supplement thereof.

Not only do the "might have beens" referring to a few touch ups and small things yet to be done by appellee amount to a de minimis with reference to substantial completion of his task, but the doctrine of judicial estoppel should prevent appellee from now taking the posture that he was working as an independent contractor on a defined project which "might" not have been completed when he previously represented to this court in connection with the first appeal of this matter (*Brubaker v. Glenrock Lodge International Order of Odd Fellows v. Lythgoe*, Wyo., 526 P.2d 52 (1974)) that:

> "The stairway in question was physically repositioned by Lythgoe on Sunday, March 17, 1968, *some seven months prior to the accident event.* Such repositioning occurred during the course of a remodel-

---

**3.** We do not decide the question of coverage under the second policy. In *W. N. Leslie, Inc. v. Travelers Insurance Company*, 264 S.C. 408, 215 S.E.2d 448 (1975), the court found coverage under the language used in the second policy here. From the opinion in *Brubaker v. Glen-*

*rock Lodge International Order of Odd Fellows*, Wyo., 526 P.2d 52 (1974), there is a suggestion that the two cases may be distinguishable on the basis of more extensive use by Katherine Brubaker.

ing project conducted by the building's owner, the Lodge, and thereafter such remodeled space was occupied by Plaintiff as the tenant of the Lodge."[1]

In *Allen v. Allen*, Wyo., 550 P.2d 1137, 1142 (1976), we said:

"The principle, while denominated judicial estoppel, is sometimes referred to as a doctrine which estops a party to play fast and loose with the courts or to trifle with judicial proceedings. It is an expression of the maxim that one cannot blow hot and cold in the same breath. A party will just not be allowed to maintain inconsistent positions in judicial proceedings, as here. 31 C.J.S. Estoppel § 117, pp. 624–625.

"The role of judicial estoppel has been accepted in this state. *Hatten Realty Co. v. Baylies*, 1930, 42 Wyo. 69, 89–93, 290 P. 561, 72 A.L.R. 587. It was there held that where a man is successful in a position taken in a previous court proceeding, that position rises to the position of conclusiveness. It constitutes a solemn and sworn acknowledgment of the correctness of plaintiff's claim. Following the same reasoning reached in *Hatten*, it would be highly inequitable for the defendant to have a decree in his divorce case holding the property not to be his and at the same time be held the owner of an interest in this proceeding. It is that very inconsistency that judicial estoppel will not tolerate. Defendant's statements in the previous action are the very highest order of evidence against him and are entitled to judicial sanctity. He cannot play hanky–panky with the courts of this state and thus interfere with the integrity of the judicial system. See *Parkinson v. California Co.*, 10 Cir. 1956, 233 F.2d 432, 437–438, for a discussion of *Hatten*. "We are not a bit concerned that the matter of judicial estoppel was not raised in the lower court or argued by either of the parties. This court has general superintending control over all the courts of the state and the Wyoming judicial system in general. It is our duty to protect its integrity and prohibit dealing lightly with its proceedings. We are at liberty to decide a case upon any point which in our opinion the ends of justice require, particularly on a point so fundamental that we must take cognizance of it." (Footnotes omitted.)

Appellee here takes the position that he had a composite operation to perform and that it was not completed (although the stairway part was) because there "*might have been* some other things" and "there *might have been* a few touch ups" to do—not having anything to do with the stairs. In the previous case he took the position that he was working on an hourly basis (rather than on a composite operation) to do some carpentry work, and that his employment could be terminated at anytime. In the first appeal, we summarized the testimony relative to appellee's status as follows:

" * * * Simon testified as follows:

"That Lythgoe was employed and was to be paid by the lodge at an hourly rate; that he did not know if Lythgoe could hire assistants but supposed he did so but added that he was never given that authority by the lodge as it was never mentioned. Lythgoe did not furnish materials or supplies; had no right to control the progress of the work, and there was no agreed time for completion; that when Lythgoe finished some portion of the work they would talk it over in the lodge and the lodge could have terminated his empolyment [sic] at any time. The lodge had the right to control and supervise his work. He also testified the lodge paid for the materials and no one but the lodge controlled the premises during this remodeling and the lodge had the right to tell Lythgoe what to do during the process of his work.

"Lythgoe does not contradict any of this testimony. *He testified he was employed*

---

1. Page 1, Appellee's brief in previous case, which brief is part of our files and of which we may take notice.

*by the lodge to do some carpentry work at $5.00 per hour,* that he did not direct the work done by the other members helping. He was not asked to oversee the work and it was never mentioned he would be straw boss or oversee the job. He kept account of his work. He does not contradict Simon, who did not testify positively as to whether he had authority for hiring assistants, saying in answer to such question: 'That was never discussed but I figured I didn't have, because they hired me, and I never had the ———.' He had no right to control progress of the work and there was no set time for completion. It was determined at the lodge meetings what should be done and he did not have the right without permission of the lodge to hire any assistant or another carpenter. *If he had been half finished when the lodge decided to hire someone else to do the work he would have submitted a statement for the work done up to the time and would have had no claim against the lodge.* He supposed the lodge had the right to tell him what to do on the job and that insofar as he was concerned the lodge had control of the entire project." (Emphasis added.) 526 P.2d at 56.

And seven months elapsed between the time appellee completed the stairway work and the time of the accident. Appellee ought not be allowed to first tell this court that he completed the stairs and was working by the hour on other tasks and to now tell this court that his operation, including the stairs, was not completed—even if he now uses the words "might have." The doctrine of judicial estoppel should be invoked against him.

On June 5, 1980, I presented the following to the other members of the court with a suggestion that it be published as the opinion of the court. The majority of the court did not agree with the suggestion. I believe it reflects the proper disposition to have been made of this case:

This case involves questions concerning the existence, interpretation and application of a "completed operations hazard" provision of a liability insurance policy. This, in turn, is determinative as to whether or not appellant–insurer is obligated to defendant–appellee–insured in an action brought by a third party against appellee for damages resulting from personal injuries received when a basement stairway installed by appellee collapsed.

After a trial to the court, judgment was entered in favor of appellee and against appellant for attorney fees and costs in the amount of $14,346.83 incurred by appellee in defense of the personal injury action.

We reverse.

Appellee was in the construction and carpenter business. He was employed by Glenrock Lodge International Order of Odd Fellows to do certain remodeling work in a building in Glenrock, including the rebuilding, reconstruction and relocation of the stairway leading to the basement. A third party, Katherine Brubaker, was using the stairway to go to the basement when it collapsed. A jury found in favor of appellee and the Glenrock Lodge in Mrs. Brubaker's action against them for damages resulting from injuries occasioned by the collapse of the stairway. After we reversed on appeal and remanded for a new trial (*Brubaker v. Glenrock Lodge International Order of Odd Fellows,* supra), the matter was settled without loss to appellee, except for the expended attorney fees and costs. Appellant had refused appellee's demand to defend or assume liability in the Brubaker action on the ground that the policy issued to appellee by appellant did not cover such occurrence.

Appellant issued a policy to appellee for the period of May 24, 1965 to May 24, 1968 (hereinafter referred to as first policy) and renewed it with a policy for the period of May 24, 1968 to May 24, 1971 (hereinafter referred to as second policy). The stairway collapsed with Mrs. Brubaker on October 17, 1968. In light of the "renewal" feature of the second policy, the parties have argued at length concerning whether or not provisions of the first policy applied to the occurrence in addition to, or in lieu of, the provisions of the second policy. Since ap-

pellee did not have coverage for the occurrence under either policy, we need not address this argument.

"Completed operations hazard" is a risk which can be insured. However, it is a risk which need not be included in a liability insurance policy. An insurance policy may insure against liability for damages resulting to person or property on the insured's premises. Except for liability insurance covering the operation of motor vehicles, this "on premise" type of liability insurance is the most common. An insurance policy can also be obtained which also insures against liability for damages resulting to person or property from operations performed by the insured off the insured's premises. Such policy normally covers the risk only until the off–premises operation is completed. Of course, both risks can be covered in the same policy. Finally, a "completed operations hazard" policy can be obtained which insures against liability for damages to person or property that occur after the operation is completed. This type of coverage differs from regular liability coverage for damages resulting on or off premises in that it insures against defective workmanship. A policy which excludes coverage on defective workmanship normally does so by specifying the exclusion. As said in *Leakakos Construction Company, Inc. v. American Surety Company of New York,* 8 Ill.App.3d 842, 291 N.E.2d 176, 179 (1972):

"* * * [Completed hazards exclusion] clearly indicates that the parties intend to limit the insurer's liability to accidents occurring during the process of the work and to exclude liability for accidents due to defective workmanship occurring after completion. * * *"

The first policy reflects that bodily injury and property damage liability coverage was purchased for "Division" "1. Premises–Operations." Coverage was not purchased for the other three "divisions" listed on the policy as available for coverage, i. e., "2. Elevators"; "3. Independent Contractors," and "4. Products–Completed Operations."

Accordingly, the policy did not apply to "completed operations." The policy defined "Products–Completed Operations" in pertinent part as the damage which "occurs after such operations have been completed or abandoned."

The second policy reflects that bodily injury and property damage liability coverage was purchased for "manufacturers' and contractors' liability insurance." Coverage was not purchased for the other four policy listed coverages, i. e., "Comprehensive General Liability Insurance," "Owners', Landlords' and Tenants' Liability Insurance," "Contractual Liability Insurance," and "Completed Operations and Products Liability Insurance." Accordingly, the policy did not apply to "completed operations and products liability." The policy defined "completed operations hazard" in pertinent part as damage which "occurs after such operations have been completed or abandoned." Additionally the page of the policy captioned "Coverage for Premises and for the Named Insured's Operations in Progress" recites that "this insurance does not apply: * * * (m) to bodily injury or property damage included within the completed operations hazard or the products hazard."

Accordingly, appellee did not purchase insurance covering liability for damages resulting from defective workmanship which occurred after completion of the operation.[2]

The question, then, is whether or not there was any evidence to support a finding that the operation was not completed. The trial court did not make a specific finding relative thereto, but it indicated that it reviewed the matter with particular reference to, among other things, the question of "was the operation completed?" A general finding was made in favor of appellee, and the judgment was rendered in his favor. On appeal, we must treat a judgment which is rendered without special findings of fact as carrying with it every finding of fact supported by the evidence. *Brug v. Case,* Wyo., 600 P.2d 710, 715 (1979); *Zitterkopf*

---

**2.** About a year after Katherine Brubaker began her action against appellee, appellee secured a

rider on the second policy which covered the risk of "completed operations."

*v. Roussalis*, Wyo., 546 P.2d 436, 437 (1976). Therefore, if there is any evidence in the record that the operation was not completed within the meaning of the insurance policies, we must accept the trial court's finding that such was not completed.

However, we find none. And both parties acknowledge that the stairway work was completed. Appellee states in his brief that "the record only indicates that appellee's work on the staircase had been completed," and that "appellee had completed his work on the staircase that later collapsed." However, appellee points to the definition of completion in the second policy and contends that there is no evidence that Mrs. Brubaker had used the stairs on a previous occasion, wherefore, they were not put to the intended use under paragraph (3) of that definition.[3] He concludes that the operation was not completed for that reason.

In this, appellee overlooks three things: (1) The definition of completion in the second policy has reference to the *earliest* of the three times listed in the numbered paragraphs. The evidence reflects that the operation was finished without reference to being put to intended use. (2) The stairway was being put to the intended use at the time of collapse. The test of "intended use" is not for the purpose of using to test the workmanship of the construction or repair, i. e., to see if it was done correctly; rather it is for the purpose of specifying the exact time at which the operation was completed and liability ceases for damages due to work activity. (3) Finally, we can take notice of our opinion in *Brubaker v. Glenrock Lodge*, supra, in which we commented on the facts that Mrs. Brubaker had ascended the stairs, met Mrs. Hendricks at the top; Mrs. Hendricks said something about the stairs "feeling funny"; Mrs. Brubaker turned to go down to see what was the matter, and the collapse then occurred. We also commented therein on Mrs. Brubaker's claim against the Lodge for the Lodge's negligent use of the stairs "by moving heavy objects over them."

Appellee's testimony relative to completion of the operation was:

"Q. Now, in March of 1968, did you do some work for the Glenrock Lodge of the International Order of Odd Fellows?

"A. Yes, I did.

"Q. Would you describe that for us?

"A. At the time of the remodeling, of which is now Kay's Clothing Store, they decided that they would like to have the stairs changed from one direction to the other for better access, so I proceeded to take the stairs apart and turn them around and replace them on the opposite direction.

"Q. You didn't build those stairs, did you?

"A. No, I did not.

 \*   \*   \*   \*   \*   \*

"Q. Mr. Lythgoe, at the time Mrs. Brubaker was injured, had you completed your work in the lodge?

"A. There might have been some other small things that we had to do but that part of it was completed.

"Q. *That is the stairway, which was involved in her injury had been completed?*

"A. *Yes, that part was.*

"Q. What other things are you talking about that might have not been done?

"A. There might have been a few touch ups and things like that.

---

**3.** The second policy provides in part:

" \*   \*   \* Operations shall be deemed completed at the earliest of the following times: "(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed, "(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or "(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project. "Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed."

"Q. Was that in the same area?

"A. Yes, in the same area." (Emphasis added.)

There is no evidence that the repair or reconstruction of the stairway was *not* completed. The only evidence is to the contrary. The stairway had been put to its intended use pursuant to the definition thereof in the second policy. Appellee testified that the stairway had been completed but that there "might have been *other small* things that we had to do * * * a few touch ups and things like that." (Emphasis added.)

> "A contract or operation is deemed completed when the work contracted for or undertaken has been finished, even though minor details of performance may remain." 12 Couch on Insurance 2d § 44:435, p. 20 (1964). See *Aetna Casualty & Surety Co. v. Rothman*, La.App., 331 So.2d 81 (1976); *Martinez v. Hawkeye–Security Insurance Company*, 195 Colo. 184, 576 P.2d 1017 (1978); *Casey v. Employers National Insurance Co.*, Tex.Civ. App., 538 S.W.2d 181 (1976).

Since the coverage purchased by appellee under both the first policy and the second policy is clear and does not include "completed operations hazard," appellant did not have an obligation to defend appellee in an action brought against him for damages arising out of an operation which was not covered, i. e., for damages due to defective workmanship.

The first policy provides that defense of legal action shall be provided "with respect to such insurance as is afforded by this policy * * *," and the second policy provides that appellee "shall have the right and duty to defend any suit against insured seeking damages on account of *such* bodily injury and property damage" (emphasis added). The bodily injury and property damage referred to is stated to be that "to which this insurance applies."

Although an insurer's duty to defend is broader than the duty to indemnify, *Lanoue v. Fireman's Fund American Insurance Companies*, Minn., 278 N.W.2d 49 (1979); *Boston Insurance Company v. Maddux Well Service*, Wyo., 459 P.2d 777 (1967), the determination as to whether or not the legal action is one which the insurer has an obligation to defend is not made on the basis of the ultimate liability of the insurer to indemnify the insured, nor is it made on the basis of whether or not the action is groundless or unsuccessful. *Employers' Fire Insurance Company v. Beals*, 103 R.I. 623, 240 A.2d 397 (1968); *Burger v. Continental National American Group*, 6th Cir. 1971, 441 F.2d 1293. Rather the determination as to whether or not the insurer has a duty to defend an action against the insured is first made on the basis of the allegations of the complaint. If the complaint alleges facts within the coverage of the policy, the duty to defend exists regardless of the merits of the action or of the ultimate outcome of it. The converse is not always true. Although the facts alleged in the complaint do not bring the action within coverage of the policy, the insurer may still have a duty to defend if it is in possession of other facts, or if it reasonably should be in possession of other facts by virtue of a reasonable investigation or inquiry, which would bring the action within coverage of the policy. *J. L. Simmons Co., Inc. v. Fidelity and Casualty Co.*, 7th Cir. 1975, 511 F.2d 87; *Sheppard, Morgan and Schwaab, Inc. v. United States Fidelity and Guaranty Company*, 3 Ill.Dec. 138, 44 Ill.App.3d 481, 358 N.E.2d 305 (1976); *City of Palmyra v. Western Casualty and Surety Company*, Mo.App., 477 S.W.2d 428 (1972); *United States Fidelity and Guaranty Company v. Baugh*, 146 Ind.App. 583, 257 N.E.2d 699 (1970).[4]

The third–party complaint of Glenrock Lodge International Order of Odd Fellows,

---

4. The second policy requires a defense by the insurer "even if any of the allegations of the suit are groundless, false or fraudulent." Such provision does not impose a duty to defend outside the coverage of the policy. *Isaac v. Reliance Insurance Company*, 201 Kan. 288, 440 P.2d 600 (1968); *Consumers Construction Company v. American Motorists Insurance Company*, 118 Ill.App.2d 441, 254 N.E.2d 265 (1969); *Universal Towing Company v. Hartford Fire Insurance Company*, 8th Cir. 1970, 421 F.2d 379.

which first brought appellee into the lawsuit filed by Mrs. Brubaker, alleges that the collapse of the stairway was caused as a result of appellee's negligence "with regard to the workmanship undertaken by * * * [appellee] and the negligent manner in which said stairway was rebuilt, reconstructed and/or relocated." It further alleges that the stairway was being put to use by Mrs. Brubaker at the time it collapsed. In an amended complaint, Mrs. Brubaker expanded her original complaint to include appellee as a defendant. In it she alleged that appellee "failed to properly and adequately install such stairway" and that the stairway was being put to use by her at the time it collapsed. Both pleadings speak of the moving, installation, replacing and relocating of the stairway in the past tense, i. e., as already completed.

Accordingly, the two complaints alleged injuries which occurred when the stairway was put to its intended use and which occurred as a result of poor workmanship on the part of appellee. The two complaints did not set forth an occurrence within the coverage of either the first or second policies. There is nothing in the record to indicate that appellant had knowledge of facts which would bring the action within such coverage, or to indicate that appellant should have had such facts as a result of a reasonable investigation or inquiry. Actually, an investigation or inquiry would develop facts to exclude the action from such coverage.

Appellee urges us to adopt and apply the "doctrine of reasonable expectations" to this case, i. e., to make the questions of coverage and the duty to defend depend upon the reasonable expectations of the insured even though the policy provisions negate these expectations. The adoption and application of such a doctrine would make the important relationship of insurer and insured too nebulous and uncertain. We will not reverse or change the position set forth by us in *Alm v. Hartford Fire Insurance Company*, Wyo., 369 P.2d 216, 217–218 (1962):

> " * * * where terms of an insurance policy are clear and unambiguous, they will be enforced the same as are the terms of other contracts, *Addison v. Aetna Life Insurance Company*, Wyo., 358 P.2d 948, 950; that parties have the right to embody in their insurance contract whatever lawful terms they wish and courts will not rewrite them, *Rosenblum v. Sun Life Assur. Co. of Canada*, 51 Wyo. 195, 214, 65 P.2d 399, 405, 109 A.L.R. 911, 919. * * *
>
> " * * * in case of ambiguity or doubt respecting the terms of the policy, the contract should be construed against the company and in favor of the insured. *Wilson v. Hawkeye Casualty Co.*, 67 Wyo. 141, 215 P.2d 867; *Royal Ins. Co. v. O. L. Walker Lumber Co.*, 24 Wyo. 59, 155 P. 1101."

I would reverse and remand with direction to enter a judgment for appellant.